**Michael Douglas O'NEAL, et al.**

v.

**BARROW COUNTY BOARD OF COMMISSIONERS, et al.**

**Civ. No. 2:89–cv–23–WCO.**

United States District Court,
N.D. Georgia,
Gainesville Division.

Aug. 3, 1990.

**860**

Curtis Glen Shoemaker, Athens, Ga., for plaintiffs.

William C. Healan, Winder, Ga., for defendants.

## ORDER

O'KELLEY, Chief Judge.

The captioned case is before the court on the defendants' motion for summary judgment. On the court's order, the parties have submitted additional evidence and arguments for the court's consideration. After carefully considering the record and the briefs of counsel, the court grants the defendants' motion for summary judgment.

This is a case brought by employees of the Barrow County Emergency Medical Service to recover overtime compensation allegedly due under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"). Barrow County claims that it is entitled to apply the partial exemption to the mandatory overtime provisions, which are based on the 40 hour work week, because the plaintiffs are ambulance and rescue service employees. 29 U.S.C. § 207(k).

The following facts are undisputed. The plaintiffs are current or past emergency medical technicians or paramedics employed by the Barrow County Emergency Medical Service ("EMS"). The emergency service is dispatched to a variety of emergency medical calls, automobile and other accidents, crime scenes, and fire emergencies. The emergency service is also dispatched on a stand-by basis to structure fires and performs "slow calls," non-emergency medical transfers. Barrow County EMS classifies incoming calls as "emergency," "urgent," or "slow call," and calls are logged according to type and duration. While on duty but not responding to a call, emergency service personnel are "on call," and they repair, clean and stock their ambulances and work areas. Emergency service personnel are rotated through service as the dispatcher, in 8 hour portions of their 24 hour shifts.

In regard to the plaintiffs' training, the facts are undisputed that each plaintiff was trained and certified as a paramedic or as an emergency medical technician (EMT). Such training focuses on the appropriate treatment of suddenly occurring medical conditions or traumas. The plaintiffs emphasize that they are trained to provide a variety of medical assistance "without regard to origin" of the injury or condition. Each has received additional training as necessary to maintain his certification. Each of the plaintiffs, but not each of the paramedics and EMTs employed by the de-

fendants, has also received training in fire protection and most are volunteer firemen. Barrow County, however, does not provide fire fighting or rescue training and does not require that its EMS personnel receive such training.

The plaintiffs are paid overtime at a rate of one-and-a-half times their regular pay when they work more than 106 hours in a two week pay period. The defendants' overtime pay policy, adopted in October 1985, was intended to comply with the Fair Labor Standards Act and *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). The defendants argued that any violations of FLSA occurred despite their good faith reliance on and conformity with written Department of Labor interpretations of the overtime provisions of the FLSA.

### Applicable regulations

Section 7(k) of the FLSA provides a partial exemption from the overtime provisions for public agencies' employment of employees in fire protection or law enforcement activities. 29 U.S.C. § 207(k). Where the work period is 14 days, overtime must be paid only when a fire protection employee exceeds 106 hours in a pay period; law enforcement employees are entitled to overtime after 86 hours in a two week period. 29 C.F.R. § 553.230. Employees who work both in fire protection and law enforcement are covered by the maximum hours standard applicable "to the activity in which the employee spends the majority of work time during the work period." 29 C.F.R. § 553.213. The Barrow County EMS are paid overtime according to the standard for employees engaged in fire protection activities.

"An employee in fire protection activities" includes "rescue and ambulance service personnel if such personnel form an integral part of the public agency's fire protection activities." 29 C.F.R. § 553.210(a). Barrow County funds a largely volunteer fire department, and the EMS is generally dispatched simultaneously with the fire department for emergency fires, "confirmed structure fires" (presum-

ably with no known injuries) and automobile accidents.

The federal regulations provide that "[e]mployees engaged in fire protection ... activities ... may also engage in some nonexempt work, which is not performed as an incident to or in conjunction with their fire protection or law enforcement activities.... The performance of such nonexempt work will not defeat ... the section ... 7(k) exemption[ ] unless it exceeds 20 percent of the total hours worked by that employee during the workweek or applicable work period. A person who spends more than 20 percent of his/her working time in nonexempt activities is not considered to be an employee engaged in fire protection or law enforcement activities for purposes of this part." 29 C.F.R. § 212(a).

"Ambulance and rescue service employees of a public agency other than a fire protection or law enforcement agency may be treated as employees engaged in fire protection or law enforcement activities of the type contemplated by section[ ] 7(k) ... if their services are substantially related to firefighting or law enforcement activities in that (1) the ambulance and rescue service employees have received training in the rescue of fire, crime, and accident victims or firefighters or law enforcement personnel injured in the performance of their respective duties, and (2) the ambulance and rescue service employees are regularly dispatched to fires, crime scenes, riots, natural disasters and accidents." 29 C.F.R. § 553.215.

### Discussion

The court notes initially that summary judgment is only proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law." Fed.R. Civ.P. 56(c). Because the procedure deprives the parties of a trial on the issues, the court must be careful to ensure that only those claims for which there is no need for a factual determination as to any

material fact are disposed of by summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A court evaluating a summary judgment motion must view the evidence in the light most favorable to the non-movant. *Samples v. City of Atlanta*, 846 F.2d 1328, 1331 (11th Cir.1988); *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir.1986). To survive a motion for summary judgment, the non-moving party need only present evidence from which a jury might return a verdict in his favor. *Samples*, 846 F.2d at 1331.

■ The defendants argued that they were authorized to apply the exemption to the overtime standards of the FLSA to the calculation of the plaintiffs' compensation solely by section 553.215 of the federal regulations. The defendants contended that section 553.210(a) would apply only "[i]f Barrow county maintained a fire department and if within that fire department ambulance and rescue employees were hired as an integral portion of fire protection." Second Supplemental Brief in Support of Defendants' Motion for Summary Judgment, p. 12. As employees of a public agency other than a fire department, however, the plaintiffs qualify for the § 7(k) exemption upon satisfaction of the requirements of section 553.215, *i.e.*, that they received training "in the rescue of fire, crime, and accident victims, or firefighters or law enforcement personnel injured in the performance of their respective duties" and that they are "regularly dispatched to fires, crime scenes, riots, natural disasters and accidents." The defendant also argued that the limitation on the amount of "non-exempt" time applies only to exemptions pursuant to section 553.210(a).

The court agrees with the defendant that it would render section 553.215 redundant and contradictory to require ambulance and rescue service employees which are employees of a public agency other than a fire department to satisfy section 553.210 in order to qualify for the section 7(k) exemption. Accordingly, the court finds that the defendants need only show that, based on the undisputed facts, they are as a matter of law entitled to apply the § 7(k) exemption as provided in 29 C.F.R. § 553.215. The court further finds that the § 553.212 limitation on the amount of "non-exempt" time which may be worked in a pay period does not apply to exemptions authorized by § 553.215.[1]

■ As cited above, § 553.215 requires that "[a]mbulance and rescue service employees may be treated as employees engaged in fire protection or law enforcement activities of the type contemplated by section[ ] 7(k) ... if their services are substantially related to firefighting or law enforcement activities." Such substantial relation is proven by showing that the ambulance and rescue service personnel "have received training in the rescue of fire, crime, and accident victims or firefighters or law enforcement personnel injured in the performance of their respective duties," and that "the ambulance and rescue service employees are regularly dispatched to fires, crime scenes, riots, natural disasters and accidents." 29 C.F.R. § 553.215. The plaintiffs were trained and certified as paramedics or as emergency medical technicians to provide treatment for suddenly occurring medical conditions or traumas. The court has found no cases which define the term "rescue" in the context of the FLSA and the 7(k) exemptions. The court finds no evidence that the plaintiffs have been trained to extricate victims from burning buildings, crushed automobile or col-

---

1. Section 553.212 provides:
   [e]mployees engaged in fire protection or law enforcement activities as described in §§ 553.-210 and 553.211, may also engage in some nonexempt work ...
   Thus, § 553.212 by its own terms applies only to exemptions authorized by §§ 553.210 and 553.-211. Furthermore, it appears from the evidence submitted and summarized by the parties that more than 80% of the hours worked by the

plaintiffs in each work period at issue were spent in an "on call" status at the base of operations. The very purpose of § 7(k) is to exempt local governments from the overtime requirements of the FLSA in regard to emergency response employees who by the nature of their jobs must spend large amounts of time "on call" and ready to be dispatched but largely idle. *See, Norton v. Worthen Van Service, Inc.*, 839 F.2d 653, 654–56 (10th Cir.1988).

lapsed trenches.[2] The court finds however that the plaintiffs have received training in the activities paramedics and EMTs are commonly understood to perform, *i.e.*, to provide necessary emergency treatment at the scene of a fire, accident etc. to stabilize a patient and to continue treating the patient during transport to an appropriate medical facility. The court finds that § 553.215 does not require that ambulance and emergency rescue service employees have received training in fire fighting in order to qualify for the § 7(k) exemption. Accordingly, the court finds that the plaintiffs have been trained in the "rescue" (as that term would commonly be applied to paramedics and EMTs) of fire, crime, and accident victims and firefighters and law enforcement personnel injured in the performance of their duties and that they were trained to work in coordination with and in relation to fire protection and law enforcement activities.

In regard to whether the plaintiffs were "regularly dispatched to fires, crime scenes, riots, natural disasters and accidents," the court has carefully examined the tables submitted by the parties which calculate the amount of time each plaintiff spent on the different types of calls. In the defendants' brief, the calls were divided into the following categories: medical accident, gunshot, hanging, stabbing, dead on arrival ("D.O.A."), overdose, fight, domestic violence, fire, burn and suicide. Defendants' Second Supplemental Brief, pp. 14–17. The defendants then calculated the hours spent by each plaintiff on law enforcement activities (the total of the gunshot, hanging, rape, stabbing, fight and domestic violence calls), non-accidental medical emergencies (the total of the medical, overdose and suicide calls), accidents, fire protection activities (the total of the fire and burn calls), slow calls (non-emergency medical transfers and stand-by calls to structure fires), calls of unknown origins

and on call (idle, completing paperwork or repairing and stocking vehicles and station). Defendants' Second Supplemental Brief, pp. 18–23.

The number of hours spent by each plaintiff responding to fire, crime and accident calls is a small portion of the total hours worked, and the plaintiffs argue that they are not "regularly dispatched" to those types of rescues as required by § 553.215. The regulations do not elaborate on the meaning of the term "regularly;" the court must therefore apply the plain meaning of the word. "Regularly" does not indicate any specific frequency of occurrence, but rather indicates a pattern of recurrence. The tables compiled by the plaintiffs, which show numbers of calls divided into Medical emergencies, automobile accidents, fire, medical transfers, crime and unknown, show for the time period calculated that the Barrow County EMS was dispatched to the scene of an automobile accident anywhere from 2 to 20 times per week, with an average of about 10 per week. They were dispatched to fires from 4 to 12 times per year and to crime scenes about twice per month. The evidence shows that the plaintiffs were *regularly* dispatched to fires, crime scenes, and accidents.[3]

■ Because the plaintiffs work both in fire protection activities and in law enforcement activities, the court must determine in which activity the plaintiffs spent more of their time during each work period in order to determine whether the fire protection standard (overtime after 106 hours in two weeks) or the law enforcement standard (overtime after 86 hours) applies. In addition to the emergency "fire" and "burn" calls, the defendants argued that the time spent on automobile accidents and all other emergency calls, to which the fire department was simultaneously routinely dispatched, should be included in the "fire

---

**2.** The record does show that *some* of the plaintiffs have received training in extricating victims from such dangerous situations, *e.g.*, use of the "Jaws of Life" device to free automobile accident victims from crushed cars.

**3.** The record does not indicate that the plaintiffs were dispatched to any riots or natural disasters, however, the record does not reflect the occurrence of such events in Barrow County. The court finds that this omission does not defeat the applicability of § 553.215.

protection" category.[4] The plaintiffs responded that the court must focus on the job activities of the employees in question "rather than facts about who may be standing around watching them work." Supplemental Brief in Response to Defendants' Motion for Summary Judgment, p. 10. The court believes that responding to automobile accidents has historically been considered a fire protection activity and that fire departments are generally dispatched to the scenes of auto accidents. Deposition of Donald Holliday, p. 25, 11.5–8, p. 25, 11.18–21. Clearly any auto accident must be evaluated for fire hazards, and fire fighters may be injured in the course of extricating victims and responding to any fire hazard found to exist. Accordingly, the evidence shows that emergency service personnel dispatched to the scene of an auto accident are involved in fire protection activities.

The court further believes that slow calls in which the EMS was dispatched to confirmed structure fires on a standby basis also constitute "fire protection activities." The exact time spent on fire-related slow calls has not been calculated, though the plaintiffs' tables show the number of those calls, and they are quite numerous. Exhibit 3 to Plaintiffs' Supplemental Brief in Response to Defendants' Motion for Summary Judgment. The court finds that the overall amount of time spent by the plaintiffs during the time period in question on calls related to fire protection activities (emergency fires, burns, automobile accidents and confirmed structure fires) exceeded the amount of time spent by them on calls related to law enforcement activities (gunshots, hangings, rapes, stabbings, fights and domestic violence). Accordingly, the defendants were entitled to apply the overtime standard for fire protection employees, *i.e.*, to pay overtime at the rate of one-and-a-half times the normal hourly

rate for the hours in excess of 106 worked by an employee in a two week pay period. 29 U.S.C. § 207(k); 29 C.F.R. § 553.230.

Having found, based on the undisputed material facts, that the defendants are entitled to judgment as a matter of law, the defendants' motion for summary judgment is GRANTED. The plaintiffs' action stands dismissed.

IT IS SO ORDERED.

---

**4.** Barrow County is served by several fire departments, Statham–Barrow Fire Department, City of Winder Fire Department, Bethlehem–Barrow Fire Department, Auburn–Barrow Fire Department and County Line Fire Department. Deposition of William Thomas Emmett, p. 24, 11.7–10. Generally, a fire department's "first responders" will be dispatched simultaneously with the Barrow County EMS to the scene of any emergency call. Deposition of Emmett, p. 47, 11.13–25, p. 48, 11.1–4; deposition of Michael Douglas O'Neal, p. 79, 11.4–25, p. 80, 11.1–13; deposition of Robert A. Zillman, p. 43, 11.5–21, p. 44, 11.1–6; deposition of Donald Holliday, p. 25, 11.1–18, p. 26, 11.18–25, p. 27, 11.1–3.