929 F.2d 986
 30 Wage & Hour Cas. (BN 377, 118 Lab.Cas. P 35,468
 Jeffrey I. SCHMIDT, Plaintiff-Appellant,
and
Lisa K. Loven; William T. Walker; Braden O. Richardson;
John W. Shiflett; Joseph E. Melvin; Paul Luis Littlejohn;
Daniel Anthony Corder; Douglas L. Webb; Paula Christine
Stansel; Carol Hamlin; Wayne Moran; Donna L. Hapner;
Robert W. Harrell; Allan D. Stephens; Robin Thomas;
Kalvyn Smith; John C. Manvell; John D. Sims; Lloyd B.
Jackson, Plaintiffs,
v.
COUNTY OF PRINCE WILLIAM, VIRGINIA, Defendant-Appellee.
Lisa K. LOVEN; William T. Walker; Braden O. Richardson;
John W. Shiflett; Joseph E. Melvin; Paul Luis Littlejohn;
Daniel Anthony Corder; Douglas L. Webb; Paula Christine
Stansel; Carol Hamlin; Wayne Moran; Donna L. Hapner;
Robert W. Harrell; Kalvyn Smith; John C. Manvell; John D.
Sims, Plaintiffs-Appellants,
and
Jeffrey I. Schmidt; Allan D. Stephens; Robin Thomas;
Lloyd B. Jackson, Plaintiffs,
v.
COUNTY OF PRINCE WILLIAM, VIRGINIA, Defendant-Appellee.
 Nos. 89-1432, 89-1454.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 2, 1990.
Decided April 5, 1991.
As Amended May 6, 1991.
 
 Ross Garrett Horton, Asst. County Atty., argued (Sharon E. Pandak, County Atty., on brief), Prince William, Va., for defendant-appellee.
 Quentin Corrie, Scott Mills, Anderson & Quinn, Fairfax, Va., Gregory McGillivary, Mulholland & Hickey, Washington, D.C., for plaintiffs-appellants.
 Before ERVIN, Chief Judge, and RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, CHAPMAN, WILKINSON, WILKINS and NIEMEYER, Circuit Judges.
 K.K. HALL, Circuit Judge:
 
 
 1
 Jeffrey Schmidt, Lisa Loven and eighteen former or current employees appeal the judgment entered against them in their action against their employer, the County of Prince William, Virginia, for overtime compensation under the Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. Sec. 201 et seq. Finding no error, we affirm.
 
 I.
 
 2
 The Prince William Fire and Rescue Service ("Service") is a county agency providing fire and ambulance service. The Service comprises several divisions, one of which is the Communications Division. This division primarily receives telephone calls requesting fire, police, ambulance and rescue services, and dispatches the appropriate manpower and equipment. The dispatch duties are performed solely by persons hired and trained by the County as "fire technicians," i.e. firefighters. Each technician is required to work a one-year tour as a dispatcher. The Communications Division also employs civilian employees as "E-911 Telecommunicators" or "call-takers."
 
 
 3
 Fire technicians, including those assigned to the Communications Division, are regularly scheduled to work fifty hours per week. The County, relying on the so-called "Sec. 7(k) exemption" for employees in "fire protection activities," pays overtime only for hours worked in excess of 212 in a 28-day period. 29 U.S.C. Sec. 207(k); 29 C.F.R. Sec. 553.201(a). The non-technician telecommunicators, on the other hand, are paid overtime for hours worked in excess of forty per week. 29 U.S.C. Sec. 207(a); 29 C.F.R. Sec. 778.101. Claiming that their employment during their respective tours of duty in the Communications Division did not qualify under the overtime exemption, several fire technicians filed a complaint seeking compensation for the unpaid overtime and related injunctive and declaratory relief.
 
 
 4
 The case was tried to the bench. The evidence revealed clear distinctions between the roles of the civilian call-takers and the technician-dispatchers. All incoming calls are received by the call-takers, who then enter the information into a computer. Information concerning fire and rescue emergencies is relayed to a dispatcher to evaluate and, if necessary, to dispatch the appropriate manpower and equipment. Emergency police calls are routed directly to police dispatchers. The dispatchers' duties also include giving emergency instructions in CPR over the telephone and coordinating multi-jurisdiction responses to emergencies.
 
 
 5
 One of the plaintiffs testified that the training for the dispatcher duties was "fairly rigorous," consisting of fifty classroom hours and a two-week period of direct supervision by the shift lieutenant assigned to the Communications Division. During the tour as a dispatcher, each technician is required to maintain all certifications required of all fire technicians.
 
 
 6
 Firefighters have the option to serve an additional one-year tour as a dispatcher, but no longer. The Director of the Service testified that the Service had long-range plans to put advanced communications in the field, and that the dispatcher training would be directly applicable to the use of such equipment. He also testified that he disagreed with a suggestion that the tour of duty be lengthened to five years, because such a tour would be unnecessary and at odds with the training and familiarization purposes of the rotation.
 
 
 7
 During the tour of duty as a dispatcher, each technician is available to be called into service in the field to fight fires or to assist in other emergency operations. Additionally, dispatchers may work overtime outside the Communications Division to the extent such work is available. Call-takers, on the other hand, are restricted to the limited duties of their position.
 
 
 8
 The district court concluded that the technicians' rotation into the dispatcher job constituted "part of their overall training and familiarization" and that such training was intended "to make them able to do their firefighting duties more proficiently...." Therefore, the court ruled that the plaintiffs' dispatcher tours of duty did fall within the ambit of Sec. 207(k)'s "fire protection activities," and the County was entitled to invoke the partial overtime exemption with regard to its compensation of the dispatchers. Accordingly, judgment for the County was entered. The technicians appeal.
 
 II.
 
 9
 The statutory language underlying this dispute is not particularly helpful. Section 207(k) merely makes the partial overtime exemption applicable to "any employee ... in fire protection activities." Recourse to legislative history is similarly unavailing. See 52 Fed.Reg. 2022 (1987) ("Support personnel, including dispatchers, are not addressed in the legislative history.") The term "fire protection activities," however, was defined in the Department of Labor's regulations as follows:
 
 EXEMPTION REQUIREMENTS
 
 10
 [29 C.F.R.] Sec. 553.210 Fire protection activities.
 
 
 11
 (a) As used in sections 7(k) and 13(b)(20) of the Act, the term "any employee ... in fire protection activities" refers to any employee (1) who is employed by an organized fire department or fire protection district; (2) who has been trained to the extent required by State statute or local ordinance; (3) who has the legal authority and responsibility to engage in the prevention, control or extinguishment of a fire of any type; and (4) who performs activities which are required for, and directly concerned with, the prevention, control or extinguishment of fires, including such incidental nonfirefighting functions as housekeeping, equipment maintenance, lecturing, attending community fire drills and inspecting homes and schools for fire hazards. The term would include all such employees, regardless of their status as "trainee," "probationary," or "permanent," or of their particular specialty or job title (e.g., firefighter, engineer, hose or ladder operator, fire specialist, fire inspector, lieutenant, captain, inspector, fire marshal, battalion chief, deputy chief, or chief), and regardless of their assignment to support activities of the type described in paragraph (c) of this section, whether or not such assignment is for training or familiarization purposes, or for reasons of illness, injury or infirmity. The term would also include rescue and ambulance service personnel if such personnel form an integral part of the public agency's fire protection activities. See Sec. 553.215.
 
 
 12
 (c) Not included in the term "employee in fire protection activities" are the so-called "civilian" employees of a fire department, fire district, or forestry service who engage in such support activities as those performed by dispatchers, alarm operators, apparatus and equipment repair and maintenance workers, camp cooks, clerks, stenographers, etc.
 
 
 13
 The appellants first argue that Sec. 553.210(c) clearly excludes from the term "employees engaged in fire protection activities" all persons performing "support activities" such as dispatching. This argument ignores the language in Sec. 553.210(a), however, that explicitly includes within the exemption firefighters and "trainees" who are assigned to "support activities" (such as dispatching) for "training and familiarization purposes." For the purposes of Sec. 207(k), "civilian" support personnel are specifically distinguished from "firefighters ... who, for a number of reasons, [are] engaged in so-called 'civilian' activities (dispatching, maintenance, etc.)...." 52 Fed.Reg. 2022 (1987). One of these reasons is "for training and familiarization." The issue, then, is whether the year-long tour is properly characterized as training.
 
 III.
 
 14
 On this narrower issue, the appellants argue that the district court erred in concluding that the dispatcher tour of duty is a legitimate training program. We view this as a factual finding which, if correct, compels the legal conclusion that the 7(k) exemption is justified. Inasmuch as the appellants do not contend that a legitimate training program would not qualify for an exemption, our review is limited to whether the district court clearly erred on this factual point. Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986).
 
 
 15
 In the proceedings below, few historical facts were disputed. The focus was on the necessity for training as a dispatcher and its relationship to the firefighter's other, more traditional, duties. The evidence demonstrates, and the court found, that the dispatcher rotation does play a part in enhancing the skills and knowledge of the firefighters. The level of expertise and responsibility differs markedly from that of the civilian call-takers. The limited duration of the tour, the availability of the dispatchers for field duty, and the requirement that certifications be maintained, support the court's determination that the dispatcher tour of duty constituted a legitimate training exercise. This conclusion is not clearly erroneous.
 
 IV.
 
 16
 Appellants' final argument rests on 29 C.F.R. Sec. 553.212(a).[1] Characterizing the dispatcher's duties as "non-exempt work which is not performed as an incident to or in conjunction with their fire protection ... activities," id., they point out that 100% of a technician's work during the tour of duty is spent as a dispatcher. Appellants imply that "non-exempt" work is synonymous with "support activity." The flaw in this argument is that the dispatcher duties are not "non-exempt work" as that term is used in the regulations.
 
 
 17
 "Non-exempt work" is work which is distinct from and unrelated to "fire protection activities." "Support activities," on the other hand, are related to the task of fire protection. By carving out the exception to the 40-hour overtime requirements, Congress recognized that the nature of a firefighter's job involves large amounts of time waiting to be dispatched. See O'Neal v. Barrow County Bd. of Comm'rs, 743 F.Supp. 859, 862 n. 1 (N.D.Ga.1990). Accordingly, Sec. 553.210 preserves the statutory exemption notwithstanding that much of the work period is spent in usual support activities, e.g. equipment maintenance. State and local governments may not, however, continue to enjoy the 7(k) exemption if the essential nature of the firefighter's job changes and he is required to perform tasks unrelated to his job. The example given in the regulation itself, firefighters planting trees during slack periods, reveals the nature of the distinction between support activities and non-exempt work. The line has been drawn at twenty percent; when unrelated, non-exempt, work occupies more than one-fifth of a given work period, the firefighter is entitled to overtime after 40 hours. However, a legitimate training exercise is clearly related to firefighting, and the 20% limitation simply has no application to this case.
 
 V.
 
 18
 We conclude, then, that the district court's finding that the rotation into a one-year tour as a dispatcher constituted a legitimate training component of the firefighters' position was not clearly erroneous. The legal conclusion upholding the 7(k) exemption flows from the factual finding.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 29 C.F.R. Sec. 553.212(a) reads in full:
 Sec. 553.212 Twenty percent limitation on nonexempt work.
 (a) Employees engaged in fire protection or law enforcement activities as described in Secs. 553.210 and 553.211, may also engage in some nonexempt work which is not performed as an incident to or in conjunction with their fire protection or law enforcement activities. For example, firefighters who work for forest conservation agencies may, during slack times, plant trees and perform other conservation activities related to their firefighting duties. The performance of such nonexempt work will not defeat either the section 13(b)(209) or 7(k) exemptions unless it exceeds 20 percent of the total hours worked by that employee during the workweek or applicable work period. A person who spends more than 20 percent of his/her working time in nonexempt activities is not considered to be an employee engaged in fire protection or law enforcement activities for purposes of this part.