Kurt W. BOND, et al.,
Plaintiffs–Appellees,
Cross–Appellants,

v.

CITY OF JACKSON,
Defendant–Appellant,
Cross–Appellee.

No. 90–1369.

United States Court of Appeals,
Fifth Circuit.

Aug. 20, 1991.

See also 727 F.Supp. 1516.

Matthew M. Moore, Jackson, Miss., for defendant-appellant, cross-appellee.

Elizabeth L. Gilchrist, Jackson, Miss., for plaintiffs-appellees, cross-appellants.

Before REYNALDO G. GARZA, HIGGINBOTHAM and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The City of Jackson, Mississippi (the City) appeals a judgment awarding back pay under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219, to twenty-four current or former employees of the Emergency Medical Service (EMS) Division of the Jackson Fire Department. The question presented is whether these employees are "[employed] in fire protection activities" under 29 U.S.C. § 207(k).[1] The

---

1. 29 U.S.C. § 207(k) states:

No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities ... if—

(1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours ... in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or

(2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number

district court held that they were not engaged in such activity, and thus the City was not entitled to a limited exemption from the FLSA's overtime compensation requirements. We reverse and render judgment for the City.

## I.

Plaintiffs filed this suit alleging that the City calculated their overtime in violation of the FLSA, which requires generally that an employer provide overtime pay for all hours worked in excess of forty hours in a seven-day week. 29 U.S.C. § 207(a)(1). Plaintiffs asserted that the City incorrectly classified them as employees engaged in "fire protection activities" under 29 U.S.C. § 207(k). That section provides a partial overtime exemption for public agency employees engaged in fire protection or law enforcement activities. Section 207(k) allows employers to establish a work period of seven to twenty-eight consecutive days for the purpose of determining overtime compensation. The City paid its EMS employees, all Emergency Medical Technicians (EMTs) or paramedics, overtime only for hours worked in excess of 114 hours in a fifteen-day work period.

The background facts are straightforward. In 1978, the City added the EMS division to its fire department. The EMS division provided emergency ambulance service to the City and surrounding county, a service that had been rendered by private contractors until the City took over. The fire department staffed the new division with firefighters who obtained training as EMTs. The EMTs performed basic emergency medical procedures—administration of oxygen, cardiopulmonary resuscitation (CPR), splinting of fractures, immobilization, and bandaging. The EMS personnel were primarily responsible for providing basic patient care at the accident scene and transporting patients to the hospital. In 1985, the City decided to provide more advanced life support at the accident scene so the fire department began to hire paramed-

ics for its EMS division. Paramedics were able to render intravenous therapy, administer medication, and perform advanced airway procedures. The EMS division is now staffed with both EMTs and paramedics.

The EMS division operates five ambulances. The ambulances and the EMS personnel that operate the vehicles are housed in various fire stations located throughout the City. EMS employees share station upkeep chores with firefighters from the fire department's Combat division. The ambulances are regularly dispatched to fires, accidents, and crime scenes. However, they are typically dispatched only if there is an injury or potential for an injury.

EMS personnel often work side-by-side with firefighters at the accident scene. Over ninety percent of the calls to which EMS ambulances respond are co-response calls, meaning that the ambulance is accompanied by additional units from the fire department. When EMS ambulances respond to non-emergency calls or to calls outside the city limits, they are not accompanied by other fire department units. The EMS ambulances most frequently co-respond with the fire department's Rescue Units, which are staffed with Jackson firefighters who are also trained EMTs. The primary role of the Rescue Unit personnel is to locate trapped or injured individuals, extricate them from unsafe positions, and move them to an environment where they can receive medical attention. The primary role of the EMS employee is to tend to the medical needs of the patient. This sometimes requires the EMS employees to assist the Rescue Unit personnel in removing injured persons from automobiles. Unlike their Rescue Unit colleagues, EMS employees are not trained firefighters.

The plaintiffs also produced evidence that the EMS division functions more autonomously than other divisions in the fire department. The EMS division's policies and procedures differ from those of the fire department in several respects, including hiring, payroll, fringe benefits, badges,

of consecutive days in his work period as 216 hours ... bears to 28 days,

compensation at a rate not less than one and one-half times the regular rate at which he is employed.

uniforms, chain of command, promotional opportunities, in-service training, and rank structure. The EMS unit is jointly funded by the City and Hinds County. Thus, unlike Jackson firefighters, who only respond to calls within the city limits, EMS units respond to calls anywhere within the county.

The parties agreed to bifurcate the issues of liability and damages, and the case was tried to a jury on the issue of liability alone. The jury concluded that the plaintiffs were not employees engaged in "fire protection activities," and thus, the City improperly calculated their overtime pursuant to § 207(k). The district court later awarded plaintiffs back pay. This is the City's appeal. The City argues that because there was not "a conflict in substantial evidence to create a jury question," it was entitled to judgment as a matter of law. *Boeing v. Shipman*, 411 F.2d 365, 375 (5th Cir.1969) (en banc). We agree.

## II.

The FLSA does not define the critical phrase in § 207(k): "[employment] in fire protection activities." The Department of Labor (DOL), however, has promulgated regulations that attempt to define the phrase, and the DOL Wage and Hour Division has issued an administrative letter ruling that further clarifies the application of the FLSA to emergency medical service employees. The DOL regulation states, "The term ['employment of any employee in fire protection activities'] would also include rescue and ambulance service personnel if such personnel form an integral part of the public agency's fire protection activities. See 553.215." 29 C.F.R. § 553.210(a) (1990). Section 553.215 relates specifically to ambulance and rescue service employees:

Ambulance and rescue service employees ... may be treated as employees engaged in fire protection or law enforcement activities ... if their services are substantially related to firefighting or law enforcement activities in that (1) the ambulance and rescue service employees have received training in the rescue of fire, crime, and accident victims or firefighters injured in the performance of their respective duties, and (2) the ambulance and rescue service employees are regularly dispatched to fires, crime scenes, riots, natural disasters and accidents.

29 C.F.R. § 553.215(a) (1990).

A DOL Wage and Hour Division Administrative Letter Ruling explains the application of the "fire protection activities" exemption to emergency medical service employees:

[W]e set forth two tests for determining if the activities of EMTs are "substantially related" to fire protection or law enforcement as described in section 553.-215.... The *first test* requires that EMTs be trained to rescue individuals who have been injured or who are in danger of being injured. Under these circumstances, the term "rescue" refers to actions taken to free a victim from imminent danger or harm by the most expeditious means. In many cases, this may require an EMT to take action beyond merely applying medical treatment such as bandaging, administering oxygen, or transporting an individual to a hospital. For instance, there may be situations where the EMTs, as the first responders at the scene of an automobile accident, must extricate an injured person from a vehicle in order to begin treatment and preparation for movement as soon as possible. ... This means that an EMT must be properly trained to operate special types of equipment, such as hydraulic "spreaders" or chemical foam extinguishers, in case they are available for their use at the accident scene. Therefore, we interpret the requirement that an EMT be "trained to rescue" as meaning that the individual has knowledge of the basic life-saving procedures and life support procedures (i.e. CPR, administering oxygen, and extrication techniques). However, it is not necessary for an EMT to routinely perform any or all of these procedures in order to

meet the requirements of the first test referred to above.

. . . . .

The *second test* to determine if activities are "substantially related" to fire protection or law enforcement is that EMTs must be "regularly dispatched" to such things as fires or accidents. (See Section 553.215 of Part 553.) There is no specific frequency of occurrence which establishes "regularity"; it must be determined on the basis of the facts of each case.

DOL, Wage & Hour Div., Ltr.Rul. (Oct. 9, 1987) (emphasis added).

The second prong of the test—whether the plaintiffs are regularly dispatched to fires and accidents—is easily applied in this case. Plaintiffs themselves testified that they spend most of their time responding to accidents. In over ninety percent of the EMS calls, the EMS ambulances co-respond with one or more other units from the fire department. The plaintiffs' own testimony established that EMS ambulances were regularly dispatched to accidents and thus clearly satisfied this prong of the test.

The first prong of the test asks whether the plaintiffs received training in the rescue of fire and accident victims or firefighters injured in the performance of their firefighting duties. The DOL Letter Ruling interprets § 553.215's requirement that an EMT be trained to rescue to mean "that the individual has knowledge of the basic life-saving procedures and life support procedures (i.e. CPR, administering oxygen, and extrication techniques)." The Ruling cautioned, however, that "it is not necessary for an EMT to routinely perform any or all of these procedures" in order to meet the requirements of the test. Thus, it is irrelevant that the Jackson Fire Department employs specialized rescue teams with the primary responsibility of performing extrication procedures. The test as applied to this case asks not whether plaintiffs routinely perform rescues, only whether they received basic rescue training. And Plaintiffs testified that they received such training.

Plaintiffs urge us to adopt the reasoning in *Horan v. King County,* 740 F.Supp. 1471 (W.D.Wash.1990). The *Horan* court rejected the notion that personnel could meet the first prong of the test by simply receiving rescue training if they never actually performed rescue functions. *Id.* at 1479. We are unable to square this holding with the regulations and letter ruling discussed above. We find the reasoning of *O'Neal v. Barrow County Board of Commissioners,* 743 F.Supp. 859 (N.D.Ga.1990), more compatible with the regulations and letter ruling. The court in *O'Neal* found that it was enough that the plaintiffs had "received training in the activities paramedics and EMTs are commonly understood to perform, i.e., to provide necessary emergency treatment at the scene of a fire, accident etc. to stabilize a patient and to continue treating the patient during transport to an appropriate medical facility." *Id.* at 863. Because the EMS personnel were trained in "basic life-saving procedures and life-support procedures," we conclude that they satisfy this prong of the test.

The record reveals no conflict in substantial evidence sufficient to present a jury question. As we interpret 29 U.S.C. § 207(k) in light of the applicable regulations and the DOL Letter Ruling, the plaintiffs fall within the § 207(k) exemption. They meet both tests established by the regulations: 1) Plaintiffs received training in the rescue of fire and accident victims, and 2) Plaintiffs were dispatched regularly to fire and accident scenes. The parties' evidence did not present a jury question; the City is entitled to judgment as a matter of law.

We therefore reverse the judgment entered by the district court and render judgment in favor of the City of Jackson.

REVERSED AND RENDERED.