**Richard WOUTERS, et al., Plaintiffs,**

v.

**MARTIN COUNTY, FLORIDA, Defendant.**

**No. 91–14047–CIV.**

United States District Court, S.D. Florida.

May 15, 1992.

Ben Patterson, Tallahassee, Fla., for plaintiffs.

Joseph Mancini, Richeson & Brown, J. David Richeson, Fort Pierce, Fla., for defendant.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the Court upon the parties' cross motions for summary judgment. The defendant's motion is for summary final judgment; plaintiffs' motion is for judgment as to liability only.

The instant issue is whether Martin County is violating provisions of the Fair Labor Standards Act (FLSA); specifically, whether the County is entitled to the overtime exemption found in 29 U.S.C. § 207(k).

The court notes that two Georgia cases involving similar issues (but decided differ-

ently) are currently pending before the Eleventh Circuit. *O'Neal v. Barrow County Board of Commissioners,* 743 F.Supp. 859 (N.D.Ga.1990); *Spires v. Ben Hill County,* 745 F.Supp. 690 (M.D.Ga.1990). Several other courts, discussed below, also have addressed similar or substantially similar issues. *Bond v. City of Jackson,* 939 F.2d 285 (5th Cir.1991); *Horan v. King County,* 740 F.Supp. 1471 (W.D.Wash. 1990).

## FACTS

Plaintiffs are Emergency Medical Technicians (EMTs) and paramedics who comprise the Emergency Medical Service (EMS) in Martin County. These personnel work with the fire department as components of the emergency response system in the County. Firefighters and EMS staff are assigned to facilities throughout the County in order to respond effectively and quickly in emergency situations. These facilities are staffed 24 hours per day, 365 days per year. Plaintiffs receive overtime pay after 53 hours of work weekly (instead of forty hours) because the County applies the 7(k) exemption of the FLSA to ambulance service personnel who are trained in rescue techniques and who are regularly dispatched with firefighters. 29 CFR § 553.215.

The facts reveal that EMTs in Martin County are trained in extrication techniques and have received instruction in basic life saving and life support procedures. (*See* Plaintiffs' Responses to Defendant's Request for Admissions.) The instant plaintiffs are regularly dispatched to fires, auto accident scenes, hazardous waste spills, and other accidents involving personal injury in order to provide emergency medical service to said victims. EMS personnel are often dispatched jointly with firefighters and they work as a team in numerous situations.

The narrow legal issue is whether Martin County is entitled to the 7(k) exemption as defined in § 553.215. If the Court finds for plaintiffs, a second issue must be addressed; whether defendant is entitled to a

statutory "good faith" exception pursuant to 29 U.S.C. § 259.

## DISCUSSION

Summary judgment may be granted when there are "... no genuine issues as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Tippens v. Celotex Corp.*, 805 F.2d 949, 952–954 (11th Cir. 1986); *See also*, C. Wright, A. Miller and M. Kane, Federal Practice and Procedure, § 2725 at 75 (1983). The evidence must be viewed in the light most favorable to the non-moving party. *Tippens*, 805 F.2d at 954; *Sweat v. Miller*, 708 F.2d 655, 656–657 (11th Cir.1983).

"In order to avoid the grant of summary judgment, a party must demonstrate both the existence of a material fact and a genuine issue as to that material fact. A fact is material if it constitutes a legal defense to an action." *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir.1980). In other words, a fact is material if it is an essential element of the cause of action. *Murphy v. Light*, 257 F.2d 323, 325 (5th Cir.1958). In the instant matter, this burden has not been satisfied. The disputed facts cited by plaintiff are made moot and immaterial by the conclusions of law made below.

## THE REGULATIONS

Ambulance and rescue service employees are specifically exempted (as fire protection or law enforcement personnel) by 29 CFR § 553.215 if

their services are *substantially related* to fire fighting.... in that (1) ambulance and rescue employees have *received training* in the rescue of fire, crime, and accident victims or firefighters or law enforcement personnel injured in the performance of their respective duties, and (2) the ambulance and rescue service em-

ployees are *regularly dispatched* to fires, crime scenes, riots, natural disasters, and accidents. *Id.* (emphasis added).

Thus, the "substantially related" test is met if an EMT has "received rescue training" and is "regularly dispatched."

### The 20% Rule

■ The confusion with this issue begins with whether the 20% rule (a/k/a "80/20 rule") found in 29 CFR § 553.212 applies to ambulance service personnel defined in § 553.215. § 553.212 specifically refers to §§ 553.210/.211, the provisions involving firefighters and police officers, but does not refer specifically to § 553.215, the provision covering EMTs. Further confusion arises because §§ 553.210/.211 specifically reference § 553.215 when defining the term "any employee" in those sections. As a primary issue, the court finds that the 80/20 rule found in 29 CFR § 553.212 *does apply* to EMTs as defined in § 553.215.

The effect of the 20% rule is that the County's exemption is lost if those employees work more than 20% of the time on non-exempt activities. Thus, if a firefighter is sent to work on a road crew more than 20% of the time, the County loses the exemption. The 80/20 rule specifically applies to "firefighters" as defined in § 553.-210, and said definition includes "rescue and ambulance service personnel" as defined in § 553.215.[1] Furthermore, nothing in the statutory scheme indicates that EMTs should be treated with less deference than the firefighting personnel whose rubric EMTs fall under.[2]

In practical terms, a holding that the 20% rule does not apply to § 553.215 would mean that the County is free to dispatch its EMTs and paramedics to do any job (road repair, sanitation disposal, parks and recreation) without fear of losing the 7(k) overtime exemption. Clearly, such a ludicrous

---

1. § 553.210 states, in pertinent part, that "[t]he term [any employee] would also include rescue and ambulance service personnel if such personnel form an integral part of the public agency's fire protection activities. See § 553.215."

2. Indeed, it would be anomalous to offer firefighters "more protection" than the ambulance service personnel whose status under the exemption is determined by the fact that they work in conjunction with the firefighting personnel.

result is not contemplated by the regulations at issue.

◼ Having found that § 553.212 is applied to the EMTs as defined in § 553.215, the issue then becomes defining "non-exempt" work. The court agrees with defendant that the *Spires* and *Horan* courts "misperceived" the concept of "non-exempt" activity.[3]

The plaintiffs argue that non-exempt activity includes *anything* that is not related to firefighting, accident scenes, etc. For example, in plaintiffs' view, if EMTs responded 50% of the time with the fire department and 50% of the time to heart attack victims, the responses to heart attacks would be non-exempt activity. The consequence of this interpretation is that 80% of EMS responses must be with the Fire Department or the County loses its 7(k) exemption.

The defendants urge, as stated above, that exempt activity includes all duties incident to ambulance and rescue service. Thus, nonexempt work for EMTs would be working on the "road crew" or assisting the Parks Department, to name two examples. The interpretation urged by defendant is only reasonable given the fact that § 553.215 explicitly takes into account the nature of work performed by ambulance service personnel. There is no indication that the "other" ambulance duties should be construed as nonexempt activity.

Accordingly, the court finds that ambulance service activity which is unrelated to fire rescue does not count as nonexempt activity.

Although this court's decision that the 20% rule applies to EMTs differs from the decisions in *O'Neal* and *Bond*, the logic of those decisions is applicable here in deciding what is nonexempt activity. The underpinning of those decisions is that the 80/20 rule cannot be applied to rewrite the plain meaning of § 553.215. In other words, to apply the 20% rule as plaintiffs

suggest would be to change the "regularly dispatched" rule to a "dispatched 80% of the time" rule. Such an interpretation would be "redundant and contradictory." *O'Neal*, at 862.

The Department of Labor (DOL) has issued Letter Rulings which further illustrate the point. One DOL Letter Ruling (October 9, 1987), states that "no specific frequency of occurrence ... establishes 'regularity'; it must be determined on the basis of the facts in each case." *See* Defendant's Exhibit 6. This ruling, and other similar rulings cited by defendant, clearly demonstrate that at no time was "regularly dispatched" intended to mean 80% of the time. If such a meaning was intended, the regulation easily could have been drafted to read that ambulance service personnel, in order to be exempted, must respond with the fire department 80% of the time. That, however, is not how the regulation was drafted. To read in such a requirement through § 553.212 would be to fundamentally change the plain meaning of the regulation.

### § 553.215 TEST

◼ Having found that the 20% rule does not alter the requirements of § 553.-215, the court must now determine if plaintiffs meet the two part test.

As stated above, ambulance and rescue service employees are specifically exempted (as fire protection or law enforcement personnel) by 29 CFR § 553.215 if "their services are *substantially related* to fire fighting.... in that (1) ambulance and rescue employees have *received training* in the rescue of fire, crime, and accident victims or firefighters or law enforcement personnel injured in the performance of their respective duties, and (2).... are *regularly dispatched* to fires, crime scenes, riots, natural disasters, and accidents." *Id.* (emphasis added). Thus, the "substantially related" test is met if an EMT has "re-

---

**3.** The *Horan* and *Spires* courts seem to indicate that "nonexempt" activity includes anything that is not directly fire related. *Horan* at 1479; *Spires* at 700. This interpretation, while reasonable, contradicts the plain meaning of § 553.215 which already factors in that ambulance service personnel perform both fire and non-fire related duties. As stated in the text, such an interpretation transforms the "regularly dispatched" test into an "dispatched 80% of the time" test.

ceived training" and is "regularly dispatched."

The instant plaintiffs have received the necessary training as contemplated by the regulations. The DOL has defined "rescue" as "actions taken to free a victim from imminent danger or harm by the most expeditious means." "Trained to rescue" has been interpreted to mean "that the individual has knowledge of basic life-saving procedures and life support procedures (CPR, administering oxygen, and extrication techniques). However, it is not necessary for an EMT to routinely perform any or all of these procedures in order to meet the requirements of the first test referred to above." *See* Letter Ruling of October 9, 1987.

The undisputed facts (admitted by plaintiffs) are that the instant plaintiffs have been trained in the above defined procedures. Indeed, plaintiffs concede in their admissions that they have 1) received training and instruction in the rescue and extrication of automobile accident victims; 2) received training in the medical rescue of auto accident victims; 3) received training in the treatment of burns; 4) received training in the treatment of heat exhaustion; 5) received training in the treatment of smoke inhalation, and 6) received training to provide necessary emergency treatment at fire, accident, riot, natural disaster, and crime scenes.

The DOL letter further stated that the EMTs need not be trained or required to perform fire evacuation or suppression in order to be "substantially related" to firefighting. Accordingly, plaintiffs' argument that they "have not had the training to be firefighters" is absolutely irrelevant in the disposition of this issue.

The Court finds, based on the pleadings submitted by plaintiffs and defendant, that the Martin County EMTs and paramedics meet the "trained to rescue" prong found in § 553.215.

The second element which must be met to receive the 7(k) exemption is the "regularly dispatched" factor. The plaintiffs ad-

missions concede that they are regularly dispatched to fires, automobile accidents, other personal injury accidents, etc. The plaintiffs similarly admitted that they would be dispatched to a natural disaster if one occurred.

Notwithstanding its admissions to the contrary, plaintiffs claim that they do not meet the "regularly dispatched" test. Plaintiffs support this assertion by citing statistics which indicate, depending on the one chosen, that plaintiffs respond to either 12%, 31% or 51% of "fire calls." Without any citation or support, plaintiffs claim that said percentages do not meet the regularly dispatched test. The court disagrees.

As stated by the court in *O'Neal*, " 'Regularly' does not indicate any specific frequency of occurrence, but rather indicates a pattern of recurrence." *O'Neal* at 863. Indeed, such a holding is consistent with the DOL Letter Ruling cited above which states that "[t]here is no frequency of occurrence which establishes 'regularity'; it must be determined on the basis of the facts in each case." EMS personnel in Martin County responded to an average of 285 structure fires per year from 1989–1991.[4] Plaintiffs also admitted being sent to other fires such as brush fires. In addition, plaintiffs responded regularly with the fire department to accident scenes, etc. where fires or injuries might have been involved. The above factors and the uncontroverted fact that plaintiffs responded to over five fires per week establishes that the "regularly dispatched" prong of the § 553.215 test is met in this case. The Court expressly rejects the proposition that the 80/20 rule requires dispatch with firefighters 80% of the time to establish "regularity."

The parties have also briefed the issue of defendant's "good faith" defense as found in 29 U.S.C. § 259. Because of the holding made above, that issue is moot and will not be discussed by the Court.

The Court has reviewed the motions and the record, and being otherwise duly advised, it is hereby:

4. In *O'Neal,* 4 to 12 times per year was found to be "regular."

ORDERED AND ADJUDGED that the plaintiffs' motion for partial summary judgment be DENIED. The defendant's motion for summary judgment is GRANTED.

DONE AND ORDERED.