Nos. 96-1646/1777

Kevin D. Christian; Brian             *
Helland; Larry Kipping,               *
                                      *
     Appellees/                       *
     Cross-Appellants,                *
                                      *   Appeals from the United States
     v.                               *   District Court for the Western
                                      *   District of Missouri.
The City of Gladstone,                *
Missouri,                             *
                                      *
     Appellant/Cross-Appellee.        *
                                      *
_____          *
                                      *
The Missouri Municipal                *
League,                               *
                                      *
     Amicus Curiae.                   *
                                   _____

              Submitted:  December 11, 1996

              Filed:  March 17, 1997
                                   _____

Before WOLLMAN and MURPHY, Circuit Judges, and TUNHEIM,[1] District  Judge.
                                   _____

MURPHY, Circuit Judge.

     The City of Gladstone appeals from a judgment awarding backpay and
attorney fees to three public safety officer paramedics who cross-appeal
the amount of their award.  The paramedics claim that under § 207(a) of the
Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, they are entitled
to overtime pay for any hours worked in excess of forty hours each week.
The City argues that the FLSA

_____

     [1]The Honorable John R. Tunheim, United States District Judge
for the District of Minnesota, sitting by designation.

-1-

does not require overtime pay for the paramedics because they fit within a statutory exception under § 207(k) for employees in fire protection activities. The district court granted summary judgment for the paramedics, concluding that the City had not established the partial overtime exception, but awarding them less overtime pay than they sought. We reverse.

The parties have stipulated the facts. The City has created a Public Safety Department to unify the emergency response for fires, medical emergencies, and police calls, as well as the administrative support for those services. The Department is divided into four bureaus: administrative, support services, law enforcement, and fire/emergency medical services (fire/ems). Employees in the law enforcement and fire/ems bureaus are cross-trained so that they may respond to a variety of emergency situations. The fire/ems bureau employs sixteen public safety officers who are trained and certified as firefighters, seven of whom are also cross-trained as paramedics.

The paramedics in the fire/ems bureau respond to fire alarms, accident scenes, and medical emergencies. They are available to respond to all fire calls, and they are dispatched to approximately 50% of total fire alarms each year, including since 1992 all fire alarms where a fire is confirmed and some still alarms where the cause of the alarm is unknown. They are responsible for fighting fires when they arrive at the scene, but they leave when they can in order to be available for other calls. Fire alarms make up about 11% of their calls, car accidents about 9%, and the remaining calls are other accidents and medical emergencies.

Because the work involves considerable time waiting for calls, the City uses a scheduling system of rotating shifts in the fire/ems bureau. The public safety officers and paramedics are on duty 24 hours and then have 48 hours off, working a total of nine days in a twenty-seven day period. This scheduling permits the

employees of the fire/ems bureau to eat, relax, and sleep while waiting for calls, as well as to perform other necessary support services such as training and maintaining equipment.

Three of the seven paramedics in the fire/ems bureau sued the City, alleging that the City failed to pay them overtime for hours worked in excess of forty hours each week. The City contended that under § 207(k) it was not required to pay overtime based on a forty hour workweek because the paramedics were employees in fire protection activities and were thus permitted to work 212 hours in a 28 day period before being entitled to overtime. The district court concluded that although the paramedics were engaged in fire protection activities, they did not fall under the exception because they spent more than 20% of their time on activities unrelated to fire calls.

                                I.

The first issue raised on appeal is whether the district court erred in concluding that the paramedics were employees in fire protection activities as defined in § 207(k). The paramedics argue that they are not because they do not respond to all still alarms, spend less time on fire calls than medical calls, and attend to more medical emergencies than fire alarms or car accidents. The City counters that the paramedics are fire protection employees because they are responsible for fighting fires and their paramedic activities are substantially related to firefighting. A grant of summary judgment is reviewed de novo. Crawford v. Runyon, 37 F.3d 1338, 1340 (8th Cir. 1994).

The FLSA generally requires employers to pay employees overtime compensation for any hours worked in excess of forty hours each week. 29 U.S.C. § 207(a). Because the nature of emergency service work does not fit the normal pattern of forty hour workweeks, Congress enacted § 207(k). This section provides a

partial overtime pay exception for "any employee in fire protection activities or any employee in law enforcement activities" and permits them to work a total of 212 hours during a work period of 28 days before being entitled to overtime compensation. S. Rep. No. 93-690, at 24 (1974); see S. Rep. No. 99-159, at 5 (1985). This allows the use of rotating schedules where employees work 24 hours and then have 48 hours off.

The statutory section creating a partial overtime exception does not itself define what is meant by "employee in fire protection activities," but the related regulations provide a definition. The term includes

> any employee (1) who is employed by an organized fire department or fire protection district; (2) who has been trained to the extent required by State statute or local ordinance; (3) who has the legal authority and responsibility to engage in the prevention, control or extinguishment of a fire of any type; and (4) who performs activities which are required for, and directly concerned with, the prevention, control or extinguishment of fires, including such incidental non-firefighting functions as housekeeping, equipment maintenance, lecturing, attending community fire drills and inspecting homes and schools for fire hazards. . . .The term would also include rescue and ambulance service personnel if such personnel form an integral part of the public agency's fire protection activities. See s 553.215.

29 C.F.R. § 553.210(a).

The district court concluded the paramedics did not meet the four-part test because the City had not established that the paramedics have the legal duty and responsibility to fight fires or that they perform activities concerned with fire suppression and prevention. It went on to consider the additional definition in the regulations which states that the section includes "rescue and ambulance service personnel if such personnel form an integral part of the public agency's fire protection activities." The City

-4-

argues that the paramedics meet the four-part test, but the paramedics respond that fighting fires is not their primary duty.

The paramedics concede they meet the first two parts of the test in § 553.210(a): they are employed by an organized fire department and have been certified by the state of Missouri to fight fires.  The stipulated facts also show that the paramedics have the legal authority and responsibility to fight fires (part three) and that they perform activities required for firefighting (part four).  They are thus employees "in fire protection activities."

A central consideration under the test is whether an employee actually fights fires.  See Carlson v. City of Minneapolis, 925 F.2d 264, 265 (8th Cir. 1991) (per curiam) (arson investigators who did not fight or extinguish fires not fire protection employees under four-part test).  Paramedics who are not permitted to fight fires or enter a burning building and who are only dispatched to fires to treat injured individuals are not engaged in fire protection activities under the four-part test.  Nalley v. Baltimore, 796 F. Supp. 194, 200 (D. Md. 1992).  The paramedics here are sworn firefighters, however, and they respond to every fire alarm where a fire has been confirmed, as well as some alarms where a fire has not been confirmed, amounting to approximately 50% of all fire alarms each year.  They fight fires at those alarms, constitute over 40% of the public safety officers in the fire/ems bureau and on each shift, and perform fire protection support services such as equipment maintenance and training.  The four-part test has no requirement that firefighting be the employees' only or primary duty, and the fact that the paramedics are also able to provide medical services while at fires and elsewhere does not eliminate their responsibility for firefighting.  These paramedics are employees in fire protection activities under the four-part test in § 553.210(a), and whether they fit within the statutory exception under any alternative test does not therefore need to be

considered.[2]

II.

Another section of the regulations specifically provides that employees engaged in firefighting may also do a certain amount of other work and remain within the statutory exception to overtime pay, but if more than 20% of the work is in "nonexempt activities" the employees may be

[2]Since the district court found that the four-part test was not met, it went on to consider whether the paramedics were an integral part of the fire/ems bureau. The "integral part" definition in § 553.210(a) is cross-referenced to § 553.215(a) of the regulations. The latter section provides that ambulance and rescue personnel who are "substantially related to firefighting" are included within the exception, and the district court used the factors outlined in that section to determine whether the paramedics fit within the exception. See Alex v. City of Chicago, 29 F.3d 1235, 1241 (7th Cir. 1994) (factors in § 553.215(a) provide the additional method by which paramedics who do not meet the four-part test may still come within the exception); but see O'Neal v. Barrow County Bd. of Comm'rs, 980 F.2d 674, 676-77 (11th Cir. 1993) ("integral part" test of § 553.210(a) applies to employees of a public agency that engages in fire protection; "substantially related" test of § 553.215(a) applies to employees who are not within such an agency; exception can be established under either).

Section 553.215(a) provides two factors for ambulance and rescue service employees to be "substantially related" to firefighting: they must be "train[ed] in rescue" and "regularly dispatched to fires, crime scenes, riots, natural disasters and accidents." 29 C.F.R. § 553.215(a). The paramedics here concede that they are trained in rescue, and the stipulated facts establish that they are regularly dispatched. They respond to every alarm where a fire has been confirmed as well as to some still alarms, amounting to approximately 50% of all fire calls received in the fire/ems bureau each year, and are frequently dispatched to accident scenes and other medical emergencies. See Bond v. City of Jackson, 939 F.2d 285, 288 (5th Cir. 1991) (personnel are regularly dispatched if they respond to accidents and co-respond with the fire department to over 90% of emergency medical service calls). Unrelated activities, such as patient transfers, do not make these paramedics unavailable for dispatch. See Spires v. Ben Hill County, 980 F.2d 683, 689 (11th Cir. 1993). The paramedics would therefore also fall within the § 207(k) exception under the factors set forth in § 553.215(a).

entitled to overtime.   29 C.F.R. § 553.212(a).

Section 553.212(a) states that:

> Employees engaged in fire protection or law enforcement activities as described in § 553.210 and 553.211, may also engage in some nonexempt work which is not performed as an incident to or in conjunction with their fire protection or law enforcement activities. . . . A person who spends more than 20 percent of his/her working time in nonexempt activities is not considered to be an employee engaged in fire protection or law enforcement activities for purposes of this part.

29 C.F.R. § 553.212(a). Nonexempt work is not defined, but the regulation gives an example of such work as "firefighters who work for forest conservation agencies . . . and plant trees" during slack periods. This example is far removed from the type of activities the stipulated facts show the paramedics perform in this case.

The district court applied § 553.212 and concluded that the paramedics did not fall under the overtime exception because it believed that over 20% of their work time involved activities unrelated to fire calls. The court examined the paramedics' typical day and classified each activity as exempt or nonexempt. It concluded that time spent waiting for calls, responding to fires and car accidents and completing associated paperwork, maintaining vehicles, and doing support tasks such as mail delivery and laundry services was related to fire protection and thus exempt. Time spent responding to, returning from, or completing paperwork on medical calls or accidents other than car accidents, and time spent devoted to emergency medical training or study related to emergency medical services was considered unrelated to fire protection and nonexempt. By this calculation, nonexempt work took up five hours and thirty-six minutes of the typical 24 hour day, exceeding the 20% limitation in § 553.212(a). The district court concluded that the paramedics were therefore entitled to receive overtime compensation based on a forty hour workweek.

The City argues it was error to consider time spent on accident and emergency medical calls other than fires or car accidents as nonexempt work. The paramedics contend that such time was properly counted as nonexempt because it is not related to fire protection activities.

Courts which have considered the meaning of nonexempt work in § 553.212 focus on how a particular task relates to firefighting. One approach considers whether the work "is distinct from and unrelated to fire protection activities" and whether "the essential nature of the firefighter's job changes and he is required to perform tasks unrelated to his job." Schmidt v. County of Prince William, 929 F.2d 986, 990 (4th Cir. 1991) (en banc) (internal quotations omitted). Under this approach, firefighters who spend all their time dispatching are engaged in exempt work and fit within the overtime exception even though the regulations specifically exclude civilian employees who perform such work from the exception. Id. at 989-90. Another approach defines nonexempt work broadly as any work that "generally inures to the benefit of the employer . . . which the employer requires its employees to do while they are not engaged in activities related to their fire protection or law enforcement duties." O'Neal, 980 F.2d at 681. Courts adopting this approach have indicated that to be related to fire protection duties and exempt, the work must stem from a fire call or car accident. Under this approach, calls involving paramedic services related only to medical emergencies would be nonexempt. Id.

The better approach is that adopted by the Fourth Circuit in Schmidt because it fits the broad language used by Congress in extending the overtime exception to "any employee in fire protection activities." The legislative history indicates that Congress recognized that employees in fire protection and law enforcement activities regularly work more than forty hours each week, but believed "the actual impact on State and local

governments . . . of a 40 hour standard will be virtually nonexistent" because of the overtime exception in § 207(k). H.R. Rep. No. 93-913 (1974), reprinted in 1974 U.S.C.C.A.N. 2811, 2838; see also S. Rep. No. 93-690, at 24 (1974). It also shows an intent to include paramedic and rescue work that is substantially related to fire protection within the term of "fire protection activities" in § 207(k): "[The statutory exception] is intended to cover those employees directly employed by a public agency who are engaged in rescue or ambulance activities which are substantially related to fire protection or law enforcement activities." 120 Cong. Rec. 8598 (1974); see also Justice v. Metropolitan Gov't of Nashville, 4 F.3d 1387, 1395-96 & n.2 (6th Cir. 1993) (discussing legislative intent behind exemption; Horan v. King County, 740 F. Supp. 1471, 1475-78 & n.3 (W.D. Wash. 1990) (same). Based on this legislative history, every circuit which has considered the issue has concluded that ambulance and rescue service personnel could thus be within the term "employee in fire protection activities." See, e.g., Alex, 29 F.3d at 1239 (7th Cir.); Justice, 4 F.3d at 1393 (6th Cir.); O'Neal, 980 F.2d at 677 (11th Cir.); Bond, 939 F.2d at 288 (5th Cir.).

This approach also conforms with the application of the related regulations interpreting § 207(k) by the Department of Labor. The Department has recognized that emergency medical services personnel respond to a variety of emergency calls, but in interpreting how to apply its regulations defining "employee in fire protection activities," it has not taken the position that only time spent by rescue and ambulance personnel on calls stemming from fires or car accidents is related to fire protection activities for purposes of the overtime exception. See, e.g., DOL, Wage & Hour Div., Ltr. Rul. (Jan. 9, 1992) (no requirement of a breakdown of calls stemming from fires, car accidents, and other emergencies); DOL, Wage & Hour Div., Ltr. Rul. (Oct. 9, 1987) (same). The Department's interpretation of its regulations is not "plainly erroneous or inconsistent with the regulation" and can be

controlling as long as it complies with the limits of the statute. <u>Auer v. Robbins</u>, 1997 WL 65558, at *6 (U.S. 1997).

Section 553.212 does not require overtime for employees in fire protection activities who spend their day in exempt activities related to fire protection. <u>See</u> <u>Schmidt</u>, 929 F.2d at 990 ("[Dispatching] is clearly related to firefighting, and the 20% limitation simply has no application to this case."); <u>see also</u> <u>Bond</u>, 939 F.2d 285 (no application of 20% limitation when paramedics are substantially related to fire protection and spend day co-responding with the fire and police departments). Here, the stipulated facts show that the paramedics respond to fires, fight them, and provide paramedic services at those fires, as well as on calls not involving fires. Nearly all of their time is spent on such activities, related training, support services, and waiting for calls, and they do not spend much time on activities unrelated to their firefighting or emergency medical service activities. Providing paramedic services on accident and medical emergency calls not stemming from a fire or car accident does not alter the nature of their duties or cause them to perform tasks unrelated to their job. The district court thus erred by considering time spent on paramedic activities not stemming from a fire or car accident as nonexempt. Section 553.212 does not apply here to defeat the partial overtime exception for the paramedics.

### III.

Since the City established that the paramedics are employees engaged in fire protection activities, the § 207(k) partial exception to the overtime pay requirement applies. The paramedics were not entitled to summary judgment, and we reverse and remand for entry of judgment in favor of the City. The City's appeal regarding the amount of attorney fees awarded and the cross-appeal claiming entitlement to more overtime pay than awarded are dismissed as moot.

-11-

A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT