Clarence NALLEY, Jr., et al.

v.

MAYOR AND CITY COUNCIL OF
BALTIMORE, MARYLAND.

Civ. No. B–90–3072.

United States District Court,
D. Maryland.

June 22, 1992.

Thomas A. Woodley, Washington, D.C.,
Joel A. Smith, Lutherville, Md., for plain-
tiff.

Otho M. Thompson, James S. Ruckle, Jr., and Laurice D. Royal, Baltimore, Md., for defendant.

WALTER E. BLACK, Jr., Chief Judge.

Presently pending before the Court are Plaintiffs' Motion for Partial Summary Judgment (Paper 10) and defendant Mayor and City Council of Baltimore's Motion for Summary Judgment (Paper 25). These motions present the following issue: at what point must the City of Baltimore pay overtime compensation in a workweek to employees of the fire department's division of Emergency Medical Services (hereinafter "EMS personnel")—after 40 hours or 53 hours? This issue is apparently one of first impression for a court in the Fourth Circuit.

## I

The litigants in this action are locked into a contest over the proper construction of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). In particular, the parties focus on the Act's overtime compensation provisions. Section 207(a) generally requires all employers to compensate their employees at one and one-half times their regular rate for all hours worked in excess of 40 in any given workweek.[1] This section applies to most state and local government employers.

Recognizing the special needs of government and the unusually long hours of some public safety employees, Congress made certain categories of employee exempt from the 40–hour overtime privilege. With special relevance to this suit, Congress specifically exempted employees in fire protection and law enforcement activities. That exemption, set forth in section 207(k), provides as follows:

**(k) Employment by public agency engaged in fire protection or law enforcement activities**

No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of *any employee in fire protection activities or any employee in law enforcement activities (including security personnel in correctional institutions)* if—

(1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or

(2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days,

compensation at a rate not less than one and one-half times the regular rate at which he is employed.

(emphasis added). As construed by the Department of Labor ("DOL"), an employee involved in fire protection must work a minimum of 53 hours in a week to earn overtime pay, and an employee in law enforcement must work a minimum of 43 hours. 29 C.F.R. § 553.230.

Because of the humanitarian intent behind § 207(a), the courts have narrowly construed exemptions like § 207(k). *Johnson v. City of Columbia*, 949 F.2d 127, 129–30 (4th Cir.1991); *Donovan v. Brown Equipment & Service Tools, Inc.*, 666 F.2d 148, 153 (5th Cir.1982). Indeed, exemptions

---

**1.** Section 207(a) provides in pertinent part:
(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

"ought to be applied only in those circumstances which plainly and unmistakably come within their terms and spirit." *Donovan v. Bereuter's, Inc.*, 704 F.2d 1034, 1036 (8th Cir.1983). Thus, the burden is on defendant to show that it is entitled to exempt a certain classification of employee. *Johnson*, 949 F.2d at 130. *Carlson v. City of Minneapolis*, 925 F.2d 264, 265 (8th Cir.1991).

## II

The City of Baltimore triggered this action by classifying over 100 EMS personnel as exempt because they are employed by the fire department and their work relates to the department's fire protection activities. The City does not assert here that plaintiffs fall within the law enforcement provisions of the statute. Instead, the City exclusively focuses on "fire protection activities" as defined by regulations promulgated by the DOL.

The City asserts that the Court can resolve this issue on the basis of 29 C.F.R. § 553.210, which states:

**Fire protection activities**

(a) As used in [section 207(k)] ... of the Act, the term "any employee ... in fire protection activities" refers to any employee (1) who is employed by an organized fire department or fire protection district; (2) who has been trained to the extent required by State statute or local ordinance; (3) who has legal authority and responsibility to engage in the prevention, control or extinguishment of a fire of any type; and (4) who performs activities which are required for, and directly concerned with, the prevention, control or extinguishment of fires, including such incidental nonfirefighting functions as housekeeping, equipment maintenance, lecturing, attending community fire drills and inspecting homes and schools for fire hazards.... *The term would also include rescue and ambulance service personnel if such personnel form an integral part of the public agency's fire protection activities. See § 553.215.*

....

(c) Not included in the term "employee in fire protection activities" are the so-called "civilian" employees of a fire department, fire district, or forestry service who engage in such support activities as those performed by dispatchers, alarm operators, apparatus and equipment repair and maintenance workers, camp cooks, clerks, stenographers, etc.

(emphasis added). In construing this section, the City implicitly rejects the application of the four enumerated factors of subsection (a) to EMS personnel. Instead, the City bases its case on the highlighted sentence, with its "integral part" language.

To clarify this term, the City focuses not on plaintiffs' participation in "fire protection activities" but on their close association with the fire department. The City does not define "integral part" by reference to § 553.215, a section which is cross-referenced, since it relates on its face to ambulance and rescue service employees who are not employed by a fire department.[2] In the event that the Court adopts § 553.215 as the applicable provision, the City argues in the alternative that its EMS personnel have been trained to rescue and have been regularly dispatched to accident scenes.

The City's interpretation of § 553.210(a) focuses on the plaintiffs' integration into the structure and activities of the fire department. Pursuant to this construction, the City contends that plaintiffs are similar to firefighters because they share the same

---

**2.** 29 C.F.R. § 553.215 provides:

(a) Ambulance and rescue service employees of a public agency other than a fire protection or law enforcement agency may be treated as employees engaged in fire protection or law enforcement activities of the type contemplated by [section 207(k) of the Act] ... if their services are substantially related to firefighting or law enforcement activities in that (1) the ambulance and rescue service employees have received training in the rescue of fire, crime, and accident victims or firefighters or law enforcement personnel injured in the performance of their respective [sic] duties, and (2) the ambulance and rescue service employees are regularly dispatched to fires, crime scenes, riots, natural disasters and accidents.

employer, the fire department. In addition, the City notes that plaintiffs are integrated into the department by a unified command structure, shared facilities, representation by the same union, the common purpose of assisting the community, and by use of the same color uniforms and patches. Finally, the City alludes to the frequent co-responses of firefighters and EMS personnel to medical and fire-related calls.

At the outset, plaintiffs assert that the Court should decide this issue by interpreting only the statutory language. They contend that Congress, in passing 29 U.S.C. § 207(k), explicitly chose to exempt firefighters and law enforcers, *not* EMS personnel. Nonetheless, plaintiffs do recognize that the Court has the responsibility to interpret administrative regulations that reasonably construe the statute and, accordingly, plaintiffs respond to the regulations cited by the City.

Confronting the language of § 553.-210(a), plaintiffs first assert that they do not qualify as "rescue or ambulance service personnel." Plaintiffs also contend that their work is not integral to the activities of fire protection as required by the last two of the four enumerated factors set forth in § 553.210(a), namely, the prevention, control or extinguishment of fires. As an alternative, plaintiffs follow the direction of "See § 553.215," which essentially leads to two conditions for triggering an exemption for ambulance and rescue service employees: 1) they must have been trained to rescue, and 2) they must have been regularly dispatched to fires, crime scenes, riots, natural disasters, and other accidents.[3] Although the City does not rely on § 553.215 as previously set forth, plaintiffs assert that the City fails to satisfy either condition.

Even if plaintiffs are found to form an integral part of the fire department's fire protection activities, they claim non-exemption on the basis of 29 C.F.R. § 553.212, which provides in pertinent part:

(a) Employees engaged in fire protection ... activities as described in § 553.210 ... may also engage in some nonexempt work which is not performed as an incident to or in conjunction with their fire protection ... activities. For example, firefighters who work for forest conservation agencies may, during slack times, plant trees and perform other conservation activities unrelated to their firefighting duties. The performance of such nonexempt work will not defeat ... the section ... [207(k)] exemptions unless it exceeds 20 percent of the total hours worked by that employee during the workweek or applicable work period. A person who spends more than 20 percent of his/her working time in nonexempt activities is not considered to be an employee engaged in fire protection ... activities for purposes of this part.

Relying on this provision, plaintiffs uniformly represent that more than 99 percent of their work is unrelated to fire protection. On this basis alone, plaintiffs move the Court to grant their motion for partial summary judgment.

### III

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment is granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990). Under the strict standard of the Fourth Circuit, summary judgment is proper only when the parties agree on both the facts *and* the inferences drawn from those facts. *Morrison v. Nissan Co., Ltd.*, 601 F.2d 139, 141 (4th Cir.1979).

The Court must thus decide whether a reasonable jury could find in favor of the non-moving party, taking all factual inferences in the light most favorable to the non-movant. *Helm v. Western Maryland Railway Co.*, 838 F.2d 729, 734 (4th Cir. 1988); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). It should be noted, however, that "the judge's function

---

**3.** *See supra* note 2.

is not himself to weigh the evidence and determine the truth of the matter." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511; *see Miller v. Leathers,* 885 F.2d 151, 154 (4th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). Instead, the Court must simply decide whether there is a genuine issue for trial.

## IV

In order to determine which facts are material in this action, the Court must sift through the parties' conflicting legal theories and identify the applicable rule of law.

■ The Court finds that the statutory language does not expressly bring EMS personnel within the terms of an exemption. Indeed, Congress specifically exempted employees involved in fire protection and law enforcement activities, *not* those engaged in medical services generally. If Congress truly wished to expand the reach of its exemption, it could have used more general language, such as "emergency response activities." [4]

It is well settled that Congress, by expressly excluding certain categories from a statute's coverage, demonstrates an intent to include all others. *See e.g., Andrus v. Glover Construction Co.,* 446 U.S. 608, 616–17, 100 S.Ct. 1905, 1910–11, 64 L.Ed.2d 548 (1980); *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 184, 188, 98 S.Ct. 2279, 2296, 2298, 57 L.Ed.2d 117 (1978); *Midland Telecasting Co. v. Midessa Television Co.,* 617 F.2d 1141, 1145 n. 7 (5th Cir.), *cert. denied,* 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980). This principle of inclusion is especially important in the context of FLSA, for which the courts have traditionally drawn narrow exemptions. *See su-*

*pra* p. 195. Thus, this Court has serious reservations about reading § 207(k) expansively to exempt EMS personnel from the 40–hour overtime requirement. Nonetheless, the Court finds it appropriate to look to the DOL for guidance, provided the agency has reasonably construed the statute. *See Donovan v. KFC National Management Co.,* 682 F.2d 603, 604 (6th Cir.1982). Such an approach is warranted by the acknowledged expertise of the DOL in dealing with labor issues.

In 29 C.F.R. § 553.210, the DOL has construed the term "any employee ... in fire protection activities" to refer to individuals who satisfy a four-prong test. In addition, "the term would also include rescue and ambulance service personnel if such personnel form an integral part of the public agency's fire protection activities. See § 553.215." Reading this last sentence, it might appear that the substance of an "integral part" test can be derived from the language of either § 553.210 or § 553.-215. At the outset, the Court should indicate its reluctance to delve into and apply the complexities of § 553.215, a provision that neither party genuinely invokes. Moreover, the "See § 553.215" notation merely serves to refer the reader to a related regulation that applies to ambulance and rescue personnel of a public agency other than a fire department. Because plaintiffs are employed by the fire department, § 553.215 is inapplicable by its own terms.[5] The Court shall therefore focus its attention on the internal language of § 553.210.

■ In order to identify the substance of an "integral part" test within the contours of § 553.210, the Court can either rely on the four enumerated factors or develop a

---

**4.** The legislative history of this statutory provision is scarce. The most substantive interpretation was made in 1974 by the ranking member of the House General Labor Subcommittee, who expressed the belief that ambulance and rescue personnel fall within the exemption. Because the remarks of a single legislator hardly control a determination of congressional intent, *Chrysler Corp. v. Brown,* 441 U.S. 281, 311, 99 S.Ct. 1705, 1722, 60 L.Ed.2d 208 (1979), this Court must generally treat the legislative history as inconclusive. For a full text of the legislator's

remarks, see *Horan v. King County Division of Emergency Medical Services,* 740 F.Supp. 1471, 1476 n. 3 (W.D.Wash.1990).

**5.** Accordingly, the two cases cited by defendant, *Bond v. City of Jackson,* 939 F.2d 285, 287 (5th Cir.1991), and *O'Neal v. Barrow County Board of Commissioners,* 743 F.Supp. 859, 862 (N.D.Ga. 1990), rely primarily on § 553.215 and are similarly inapposite.

separate and independent set of factors. Upon analysis, however, the Court concludes that a fire department's rescue and ambulance personnel must satisfy the four factors. In reaching this conclusion, the Court depends on a common sense interpretation of the regulatory language. For example, the drafters of the regulation chose to generally describe the term, "any employee ... in fire protection activities," as referring to anyone who fulfills the four factors. The drafters then noted that "the term would also include rescue and ambulance service personnel [who] form an integral part of ... fire protection activities." If the drafters truly wished to articulate a separate set of factors for ambulance personnel, they would not have opted for the word, "include." Because inclusion connotes similar treatment, the Court must apply the four factors to plaintiffs to determine whether they form an integral part of fire protection activities.

The City attempts to ignore these four factors and instead adopts a separate "integral part" test, which concentrates on the integration of EMS personnel into the fire *department.* The Court finds the City wrong on multiple grounds. First, the statutory and regulatory language expressly emphasizes an employee's activities—not his or her mere employment by the fire department. In addition, numerous courts have emphasized the primacy of function over form. *Carlson,* 925 F.2d at 265; *Reeves v. I.T. & T. Corp.,* 357 F.Supp. 295, 302–303 (W.D.La.1973), *aff'd,* 616 F.2d 1342, 1351 (5th Cir.1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981). Finally, the City's freewheeling interpretation has been rejected even by the DOL, which supports the view that the work of ambulance personnel must be substantially related to "fire protection activities." (Application of the Fair Labor Standards Act to Employees of State and Local Governments, 52 Fed.Reg. 2022 (1987)).

■ If plaintiffs in some manner satisfy these four factors, the City must further demonstrate under § 553.212 that plaintiffs spend 80 percent or more of their time performing work that is an incident to or in conjunction with fire protection activities. If the City fails, the plaintiffs are entitled to overtime compensation after working 40 hours in a week. In defining "fire protection activities," the Court finds most instructive the fourth factor of § 553.210 which refers to activities "which are required for, and directly concerned with, the prevention, control or extinguishment of fires."

The City makes the surprising contention that § 553.212 does not apply to EMS personnel. Not only is such an argument contrary to judicial authority, *Spires v. Ben Hill County,* 745 F.Supp. 690, 699 (M.D.Ga.1990); *Horan v. King County Division of Emergency Medical Services,* 740 F.Supp. 1471, 1479 (W.D.Wash.1990), but it ignores the structure and language of the regulations themselves. For example, § 553.212 expressly relates to employees engaged in fire protection activities as described in § 553.210. Moreover, the City glosses over the fact that former Secretary of Labor Elizabeth Dole has highlighted the importance of calculating the time an EMS employee devoted to fighting fires.[6] For all of these reasons, the Court cannot adopt the City's tenuous assertion.

## V

■ Having identified the relevant legal standards, the Court is now prepared to apply the law to the facts. Upon reviewing the record, the Court recognizes that plaintiffs' jobs primarily involve the provision of medical services. An official job description defines a "paramedic" as one who "provides emergency treatment at the scene of an accident or illness and transports sick and injured persons to medical

---

6. In a letter ruling of August 2, 1990, Secretary Dole held a county in violation of labor regulations for improperly including some emergency medical service (EMS) employees within the definition of fire protection. Specifically, her "investigation disclosed that the EMS employees

did not spend the *majority* of their work time during each work period in EMS service related to firefighting activities." (emphasis added). Ltr.Rul. (Aug. 2, 1990), *printed in* Fair Labor Standards Handbook 289–90 (ed. Mar.1991).

facilities." (Declaration of Clarence Nalley, Jr., Exhibit 17). This general description is supported by the statements of Clarence Nalley (Nalley Declaration, para. 6) and Michael W. Jachelski, Jr., chief of paramedics (Jachelski Deposition, p. 15). As a part of these duties, plaintiffs are dispatched to fires whenever injuries are reported or likely to occur. (Nalley Declaration, para. 8).

Despite this overall emphasis on medical services, the critical question is whether plaintiffs form an "integral part" of fire protection activities as defined by the four factors of § 553.210. With respect to the first factor—employment in an organized fire department, plaintiffs readily concede that the City has met its burden. (Plaintiffs' Motion for Partial Summary Judgment, p. 28 n. 14). As for the second, which requires training to the extent required by law,[7] the record reflects a disputed issue of fact. While Nalley indicates that "paramedics do not receive any training ... in connection with fire suppression" (Nalley Declaration, para. 10), the affidavit of Fire Chief Peter J. O'Connor lists numerous plaintiffs who have allegedly earned firefighting certification. (City's Motion for Summary Judgment, O'Connor Affidavit, paras. 14, 15).

The City has been less successful in satisfying—or at least raising doubts about—the third and fourth factors. For example, both Chief Jachelski and Henry Fowlkes, the administrator of the Medical Bureau, state that EMS personnel do not have the authority to engage in fighting fires. (Jachelski Deposition, p. 24), (Fowlkes Deposition, p. 17). Indeed, the City's Manual of Procedure strictly provides the following language about plaintiffs' "standby" activities:

> Paramedics, when in service on the fireground, will not enter burning buildings or smoke laden or suspected contaminated areas. If injuries occur in the aforementioned areas, the injured will be removed to a safe location by firefighting personnel for treatment by paramedics.

(Nalley Declaration, Exhibit 3). As for the fourth factor, the City has failed to prove that any plaintiff performs duties that are "required for, and directly concerned with, the prevention, control or extinguishment of fires."

■ Due to these omissions of proof, and because the four factors are listed in the conjunctive, the Court concludes that plaintiffs do not form an integral part of fire protection activities. On this basis alone, therefore, plaintiffs deserve summary judgment. However, even assuming that every factor is satisfied, the City has fallen short of complying with the mandate of § 553.212—that plaintiffs spend 80 percent or more of their time performing work that is an incident to or in conjunction with fire protection activities. In fact, not one plaintiff meets this 80 percent test.

Michael Jachelski, the chief of paramedics for eleven years, stated in his deposition that EMS personnel committed less than 1 percent of their time to fighting fires in the fiscal year 1988–89. (Jachelski Deposition, pp. 120–22). The City has not contradicted this testimony. In addition, the EMS Annual Reports from 1989 and 1990 confirm that, at most, plaintiffs were involved in fire-related activities for 1.1 percent of their time. For example, fire protection represented only 1,076 out of 100,669 calls in 1989 and only 1,099 out of 100,451 calls in 1990.[8] (Nalley Declaration, Exhibits 22 & 23).

In light of this unrefuted evidence, the Court concludes that the City has failed to establish the requisite 80 percent needed to transform EMS personnel into firefighters. Therefore, in light of both §§ 553.212 and 553.210 and the Court's obligation to construe strictly any exceptions to customary overtime compensation, the Court denies

---

7. The Court concludes that the second factor, while failing to indicate the particular type of training required, can only refer logically to instruction in fire protection activities.

8. These figures take into consideration not only the frequency of performing "standby" assistance on firegrounds but also paramedic responses to victims of burns and smoke inhalation.

the City's motion for summary judgment and grants plaintiffs' motion for partial summary judgment.