4 F.3d 1387
 126 Lab.Cas. P 33,024, 1 Wage & Hour Cas. 2d 1025
 Buford E. JUSTICE; Scott R. Redlinger; Jerry E. Preuett;
David H. Sewell; Michael W. McNally; Robert F. Braswell;
Mark A. Huckaby; Edwin F. Carter; Tim W. Pharris; William
E. Edwards; Mike G. Wakefield; Ollie Meadors; Kenneth A.
Jones; Stephen J. Prosch, and all others similarly
situated, Plaintiffs-Appellants,
v.
METROPOLITAN GOVERNMENT OF NASHVILLE, DAVIDSON COUNTY,
TENNESSEE, Defendant-Appellee.
 No. 92-6039.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 18, 1993.
Decided Sept. 24, 1993.
 
 John D. Schwalb (argued) and John M. Bryant, Jr. (briefed), Brewer, Krause & Brooks, Nashville, TN, for plaintiffs-appellants.
 William M. Safley (argued and briefed), Metro Legal Dept., Nashville, TN, for defendant-appellee.
 Before: KEITH and JONES, Circuit Judges; and PECK, Senior Circuit Judge.*
 NATHANIEL R. JONES, Circuit Judge.
 
 
 1
 Plaintiffs-Appellants ("Plaintiffs") appeal summary judgment for Defendant-Appellee Metropolitan Government of Nashville, Davidson County, Tennessee ("Metro") in this action for overtime wages. For the reasons stated herein, we reverse and remand for further consideration by the district court.
 
 I.
 A.
 
 2
 On February 11, 1991, the Plaintiffs, employees of the Emergency Ambulance and Rescue Division ("Emergency Services") of the Fire Department for Metro, sued Metro for overtime wages allegedly due them under Section 7(a) of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. Sec. 207(a) (1988). On July 9, 1991, the Plaintiffs filed a motion for partial summary judgment. On August 14, 1991, Metro filed a cross-motion for summary judgment. Metro denied liability on the basis that the Plaintiffs are exempted from the overtime wage provisions of FLSA pursuant to Section 7(k) of FLSA, 29 U.S.C. Sec. 207(k) (1988), and its accompanying Department of Labor (DOL) regulations. The district court agreed with Metro and granted its motion for summary judgment.
 
 B.
 
 3
 Metro's Fire Department is divided into three sections: (1) Fire Suppression, (2) Administration, and (3) Emergency Services. The Fire Suppression division prevents and controls fires. The Administration division is in charge of administrative activities of the department. The Emergency Services division provides emergency medical care and rescue to people in Davidson County.
 
 
 4
 Emergency Services personnel are dispatched to attend to medical emergencies at the scenes of fires, auto accidents, and crimes. Further, in the event of a riot or natural disaster, these personnel are dispatched. Although Emergency Service personnel are dispatched to fires, Emergency Services is not responsible for fighting fires. Rather, that function is left to the Fire Suppression division.
 
 
 5
 Emergency Services, while a section of the Fire Department, has its own budget, promotion plan, career development procedure, and pay classifications. Employees of this division must be certified either as an Emergency Medical Technician (EMT) or a paramedic. Emergency Services has approximately 158 employees including sixty-nine EMTs and eighty-nine paramedics.
 
 
 6
 Emergency Services employees work in two-person teams with the exception of twelve paramedics who are assigned to work in five-person units, each comprised of four firefighters and one paramedic. Metro has also implemented the First Responder Program. Under this program, many fire suppression personnel have received EMT certification. These personnel generally are the first to respond to life-threatening medical emergency calls.
 
 
 7
 Employees in the Emergency Services Division work a total of 204 hours during a twenty-seven day tour of duty.
 
 
 8
 Plaintiffs are over 100 EMTs and paramedics who are employees of the Emergency Services Division of Metro's Fire Department. Many, but not all, of the Plaintiffs have received extensive training in performing rescues and extrication.
 
 II.
 A.
 
 9
 On appeal, the Plaintiffs argue that because they are not exempt from the provisions of Section 7(k) of FLSA, the district court erred in granting summary judgment to Metro. This court's review of a grant of summary judgment is de novo; we use the same test as was used by the district court. See Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See also Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988). " '[I]nferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.' " Brooks, 932 F.2d at 500 (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962))).
 
 
 10
 In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issues of material fact remain in dispute. If the moving party meets this burden, the party opposing the motion must come forward with specific facts to show a genuine issue for trial. To sustain this burden, the non-movant cannot rest on the pleadings. Rather, the non-movant must come forward with specific facts or affidavits to supports its claims and show the existence of a genuine, material issue in dispute.
 
 
 11
 National Solid Wastes Management Ass'n v. Voinovich, 959 F.2d 590, 592 (6th Cir.1992) (citations omitted). "When confronted with a properly supported Motion for Summary Judgment, the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir.1989).
 
 B.
 
 12
 Employees of state and local governments are entitled to overtime for all hours worked in excess of forty hours per week. 29 U.S.C. Sec. 207(a) (1988) [hereinafter Section 7(a) ]; See Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 555-56, 105 S.Ct. 1005, 1020, 83 L.Ed.2d 1016 (1985). Employees engaged in fire protection or law enforcement activities may be excepted from that entitlement pursuant to Section 7(k), which states:
 
 
 13
 No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities ... if--
 
 
 14
 (1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975;[1] or
 
 
 15
 (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days, compensation at a rate not less than one and one-half times the regular rate at which he is employed.
 
 
 16
 Under this exception, fire employees may work up to 212 hours within a twenty-eight day cycle before overtime payments are due. In relying on the exception, the employer carries the burden of proving that the Plaintiffs are employees in fire protection activities, see Carlson v. City of Minneapolis, 925 F.2d 264, 265 (8th Cir.1991), and the court must construe this classification strictly against the employer. See id.; Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 208-09, 86 S.Ct. 737, 748-49, 15 L.Ed.2d 694 (1966). Furthermore, whether the city has correctly classified the Plaintiffs depends on the character of their responsibilities and tasks, not on their job titles or places of work. See Carlson, 925 F.2d at 265; Overstreet v. North Shore Corp., 318 U.S. 125, 132, 63 S.Ct. 494, 498-99, 87 L.Ed. 656 (1943).
 
 
 17
 Employees in the Emergency Services Division work a total of 204 hours during each twenty-seven day tour of duty. Metro applies the Section 7(k) exemption to them. Thus, instead of receiving overtime compensation for hours worked in excess of forty hours per week pursuant to Section 7(a), the employees are paid overtime when they work in excess of 204 hours during a twenty-seven day tour of duty. Plaintiffs object to Metro's use of the Section 7(k) exemption.
 
 C.
 
 18
 Section 7(k) does not define what it means to be an "employee in fire protection activities." As a result, the Plaintiffs contend that the exception does not apply to them. In essence, the Plaintiffs argue that if Congress truly wished to expand the reaches of the Section 7(k) exemption, it could have used more general language or it explicitly could have defined more exceptions.
 
 
 19
 While this argument has some force, all other courts which have been faced with a similar question involving this statute have not limited themselves to the statutory language. Many of these courts have noted that the phrase "employee in fire protection activities" is ambiguous; that the legislative history of the Section 7(k) reveals an intent by Congress to include ambulance and rescue service personnel within the scope of that exception; and/or that the DOL regulations which attempt to further define "employee in fire protection activities" are consistent with that congressional intent. See, e.g., Nalley v. Mayor of Baltimore, 796 F.Supp. 194, 198 (D.Md.1992) ("[T]his Court has serious reservations about reading [7(k) ] expansively to exempt EMS personnel from the 40-hour overtime requirement. Nonetheless, the Court finds it appropriate to look to the DOL for guidance, provided the agency has reasonably construed the statute. Such an approach is warranted by the acknowledged expertise of the DOL in dealing with labor issues.") (citation omitted); Horan v. King County, Wash., 740 F.Supp. 1471, 1475-78 & n. 3 (W.D.Wash.1990) (The court, relying on a colloquy between a House of Representatives member and the ranking member of the General Labor Subcommittee ("House colloquy") which indicated that ambulance and rescue service personnel who are employed by a public agency are to be covered under this exception, concluded that it could look beyond the actual statutory language. The court coupled that colloquy with Congress' intention to exempt "those public employees who are most frequently required to work more than forty hours per week," namely "law enforcement and fire protection employees," to conclude that ambulance and rescue service personnel are to be covered under the exemption.) (quoting S.Rep. No. 690, 93rd Cong., 2d Sess. 24 (1974)); see also O'Neal v. Barrow County Bd. of Comm'rs, 980 F.2d 674, 676-77 (11th Cir.1993); McKittrick v. City of Chicago, Ill., No. 90 C 3945, 1992 WL 77728 (N.D.Ill. Apr. 3, 1992) (finding Section 7(k) to be ambiguous, the court gave argumentative value to the House colloquy to indicate congressional intent). Furthermore, as a general rule, the DOL's interpretative regulations under the FLSA "constitute a body of experience and informed judgment to which courts ... may properly resort for guidance." Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).
 
 
 20
 We join the other courts in holding that the phrase "employee in fire protection activities" is ambiguous, that legislative history indicates an intent by Congress to include ambulance and rescue service personnel, and that the regulations can be relied on for guidance in determining the meaning of "an employee in fire protection activities."
 
 D.
 
 21
 Turning to the regulations, 29 C.F.R. Sec. 553.210 (1993) states, in part:
 
 
 22
 (a) As used in Sections 7(k) and 13(b)(20) of the Act, the term "any employee ... in fire protection activities" refers to any employee (1) who is employed by an organized fire department or fire protection district; (2) who has been trained to the extent required by State statute or local ordinance; (3) who has the legal authority and responsibility to engage in the prevention, control or extinguishment of a fire of any type; and (4) who performs activities which are required for, and directly concerned with, the prevention, control or extinguishment of fires, including such incidental non-firefighting functions as housekeeping, equipment maintenance, lecturing, attending community fire drills and inspecting homes and schools for fire hazards.... The term would also include rescue and ambulance service personnel if such personnel form an integral part of the public agency's fire protection activities. See Sec. 553.215.
 
 
 23
 Cross-referenced with Section 553.210 is 29 C.F.R. Sec. 553.215 (1993), which states, in part:
 
 
 24
 (a) Ambulance and rescue service employees of a public agency other than a fire protection or law enforcement agency may be treated as employees engaged in fire protection or law enforcement activities of the type contemplated by sections 7(k) and 13(b)(20) if their services are substantially related to firefighting or law enforcement activities in that (1) the ambulance and rescue service employees have received training in the rescue of fire, crime, and accident victims or firefighters or law enforcement personnel injured in the performance of their respective[ ] duties, and (2) the ambulance and rescue service employees are regularly dispatched to fires, crime scenes, riots, natural disasters and accidents. As provided in Sec. 553.213(b), where employees perform both fire protection and law enforcement activities, the applicable standard is the one which applies to the activity in which the employee spends the majority of work time during the work period.
 
 
 25
 Based on these two regulations, the district court embarked on an effort to determine whether the Plaintiffs satisfied the two-part test set out in Section 553.215 and, after concluding that they did, the court found that the Plaintiffs were employees engaged in fire protection activities. The district court did not, however, analyze whether the Plaintiffs needed to satisfy and did, in fact, satisfy the requirements of Section 553.210.
 
 
 26
 The Plaintiffs argue that the district court erred by applying the test set out in Section 553.215. They contend that Section 553.215 does not apply to them.
 
 
 27
 As noted above, Section 553.215(a) explicitly states that "[a]mbulance and rescue service employees of a public agency other than a fire protection or law enforcement agency may be treated as employees engaged in fire protection or law enforcement activities." (Emphasis added.) It is undisputed that the Plaintiffs are employees of the fire department, not employees of a public agency other than a fire protection agency. As a result, Section 553.215 does not seem to apply to the Plaintiffs. Other courts which have addressed this issue head-on have come to the same conclusion. See, e.g., Nalley, 796 F.Supp. at 198 ("Because plaintiffs are employed by the fire department, Sec. 553.215 is inapplicable by its own terms."); McKittrick, 1992 WL 77728, at * 6; cf. O'Neal, 980 F.2d 674 (11th Cir.1993) (court indicates that there are different standards for Section 553.210 and 553.215). In McKittrick, the court noted the possible incongruence of Sections 553.210 and 553.215:
 
 
 28
 This cross-reference [to Section 553.215 as noted in Section 553.210] is problematic, however, because it refers to a section of the regulation that is also, on its face, inapplicable to plaintiffs. Section 553.215 states that paramedics whose "services are substantially related to fire fighting ... activities" fall within 29 U.S.C. Sec. 207(k). 29 C.F.R. Sec. 553.215 (emphasis added). It further provides a two part test which defines the parameters of the phrase "substantially related." Section 553.215, however, applies only to "employees of a public agency other than a fire protection ... agency," id. (emphasis added), and plaintiffs are employed by the [Chicago Fire Department]. This cross reference to Sec. 553.315 could be meant to be merely a guide as to the meaning of the phrase "an integral part of" used in Sec. 553.210(a). This interpretation is doubtful inasmuch as the phrases "substantially related to" and an "integral part of" are different standards, the latter being more stringent than the former.
 
 
 29
 Id.
 
 
 30
 Notwithstanding the possible inapplicability of Section 553.215, the district court applied it to the Plaintiffs. Other courts have done the same in factually similar cases. For example, when faced with a case involving paramedics employed by the emergency medical services division of the city fire department, the Fifth Circuit, in Bond v. City of Jackson, 939 F.2d 285 (5th Cir.1991), applied Section 553.215. The court did not address the applicability of that section directly, however.
 
 
 31
 If Section 553.215 is not applicable, however, the next question is, what test should be applied to determine whether rescue and ambulance service personnel who work for a fire protection agency form an integral part of a public agency's fire protection activities? Courts have not reached a single answer to this question. A cursory reading of Section 553.210 may suggest that the test to determine whether the ambulance and rescue services are an "integral part of" the fire protection activities is somehow different from the four enumerated factors set out at the beginning of the section. As the court in McKittrick noted, parts three and four of the four-part test describe the standard firefighter and do not apply to rescue and ambulance service personnel at all. 1992 WL 77728, at * 5. The court goes on to note that Section 553.210 has a different and more stringent standard than Section 553.215 does; however, the court never discloses what is that more stringent standard. Similarly, the Nalley court stated, "In order to identify the substance of an 'integral part' test within the contours of Sec. 553.210, the Court can either rely on the four enumerated factors [in 553.210] or develop a separate and independent set of factors." 796 F.Supp. at 198-99. The Nalley court concluded that appropriate test is the four enumerated factors:
 
 
 32
 Upon analysis ... the Court concludes that a fire department's rescue and ambulance personnel must satisfy the four factors. In reaching this conclusion, the Court depends on a common sense interpretation of the regulatory language. For example, the drafters of the regulation chose to generally describe the term, "any employee ... in fire protection activities," as referring to anyone who fulfills the four factors. The drafters then noted that "the term would also include rescue and ambulance service personnel [who] form an integral part of ... fire protection activities." If the drafters truly wished to articulate a separate set of factors for ambulance personnel, they would not have opted for the word, "include." Because inclusion connotes similar treatment, the Court must apply the four factors to plaintiffs to determine whether they form an integral part of fire protection activities.
 
 
 33
 Id. at 199.
 
 
 34
 Similar to Nalley is Soles v. Board of Comm'rs, 746 F.Supp. 106, 111 (S.D.Ga.1990), which suggests that the phrase "integral part" is explained by the two-part test in Section 553.215. See also Bond, 939 F.2d at 287 (court seems to merge the phrase "integral part" and the two-part test in Section 553.215).
 
 
 35
 We are unable to side with Nalley or McKittrick. We might find the Nalley court's analysis plausible if the "integral part" language of Section 553.210 was intended to include those ambulance and rescue personnel who are firefighters and paramedics, but who mainly worked as paramedics. If this were the intent, however, there would be a group of individuals--including paramedics and EMTs who are part of the fire department but are not authorized firefighters (i.e., the Plaintiffs)--who would not fit under either Section 553.210 or 553.215. We do not think the DOL meant to have this gap in its regulations. Furthermore, such an interpretation of Sections 553.210 and 553.215 would lead to unwarranted results because it makes governing bodies choose form over substance for no clear purpose. We agree with Metro when it states:
 
 
 36
 Using the plaintiffs' argument [and the Nalley court's analysis], if the Metropolitan Government of Nashville and Davidson County simply removed the plaintiffs from the jurisdiction of the fire department, and changed absolutely nothing else, the 207(k) exemption could then apply. The defendant submits that Congress did not intend for an organizational structure, rather than job function and duties, to decide the applicability of federal wage provisions.
 
 
 37
 Metro's Br. at 27.
 
 
 38
 We also find that the McKittrick court's pronouncement that the two regulations' standards are qualitatively different unsupported by any reasoned explanation. As stated previously, we are unable to understand why ambulance and rescue service personnel within the fire department should be treated differently for these purposes from those who are within another public agency.
 
 
 39
 Rather than follow either Nalley or McKittrick, we hold Section 553.215 defines the relevant language in Section 553.210. We follow Soles and hold that "integral part" is best understood by looking to the two-part test announced in Section 553.215. But cf. McKittrick, 1992 WL 77728, at * 6, * 8 n. 9 ("[t]he court does not believe that the cross reference is meant to imply that the two-part test in Sec. 553.215, defining the meaning of 'substantially related to,' also defines the meaning of an 'integral part of.' Such a reading would collapse both standards into one, and render the two regulations 'redundant and contradictory' "). The sparse legislative history supports this holding. The House colloquy indicates no distinction between personnel connected with the fire department and those who are connected with some other department. In fact, Representative Quie clearly states that this exemption "is intended to cover those employees directly employed by a public agency who are engaged in rescue or ambulance activities which are substantially related to fire protection or law enforcement activities." 120 Cong.Rec. 8598 (1974).[2] Given that this is the only reference to the intent of Congress regarding ambulance and rescue service personnel, we find that this statement indicates that all such personnel are to be treated in the same manner under Section 7(k).
 
 
 40
 In addition to applying the two-part test to Section 553.215, we also apply the language contained in 29 C.F.R. Sec. 553.212 (1993).[3] We note that most courts which have dealt with rescue and ambulance service personnel under Section 553.215 have also applied Section 553.212 even though there is not a specific mandate to do so. See O'Neal, 980 F.2d at 680-81; Wouters v. Martin County, Fla., 793 F.Supp. 310, 312-13 & n. 2 (S.D.Fla.1992) (holding that the 20% rule of Section 553.212 applies but it does not alter requirements of Section 553.215); Littlefield v. Town of Old Orchard Beach, 780 F.Supp. 64, 68 (D.Me.1992); Spires v. Ben Hill County, 745 F.Supp. 690, 700 (M.D.Ga.1990), aff'd, 980 F.2d 683 (11th Cir.1993); Horan, 740 F.Supp. at 1479. As the court stated in Wouters,
 
 
 41
 In practical terms, a holding that the 20% rule does not apply to Sec. 553.215 would mean that the County is free to dispatch its EMTs and paramedics to do any job (road repair, sanitation disposal, parks and recreation) without fear of losing the 7(k) overtime exemption. Clearly, such a ludicrous result is not contemplated by the regulations at issue.
 
 
 42
 793 F.2d at 312-13. The same court went on the note:
 
 
 43
 Indeed, it would be anomalous to offer firefighters "more protection" than the ambulance service personnel whose status under the exemption is determined by the fact that they work in conjunction with the firefighting personnel.
 
 
 44
 Id. at 312 n. 2. Similarly, the Eleventh Circuit stated:
 
 
 45
 The regulations clearly evince a design that if rescue and ambulance service workers are treated synonymously with firefighters or law enforcement personnel for purposes of section 7(k), they are also subject to the 80/20 rule that is applicable to these principal occupations. It would be patently unfair to extend the regulatory protection of the 80/20 rule to firefighters and law enforcement personnel who come under the section 7(k) exemption by specific congressional mandate, but not extend this protection to rescue and ambulance service workers who are brought under the section 7(k) exemption only by implementing regulation. We therefore conclude that the 80/20 rule does apply to ambulance and rescue service workers who are brought within the coverage of the partial exemption in section 7(k) by 29 C.F.R. Sec. 553.215.
 
 
 46
 O'Neal, 980 F.2d at 681.
 
 
 47
 For the reasons expressed by those courts, we join the courts which hold that Section 553.212 is to be applied to Section 553.215 personnel.
 
 
 48
 In addition to the foregoing, Section 553.215 requires that 29 C.F.R. Sec. 553.213(b) (1993)[4] be applied. Section 553.215 states that, "[a]s provided in Sec. 553.213(b), where employees perform both fire protection and law enforcement activities, the applicable standard is the one which applies to the activity in which the employee spends the majority of work time during the work period."
 
 
 49
 We find that this formulation is the most natural and understandable interpretation of the regulation, especially when read as a whole. Furthermore, we find that this formulation deals most satisfactorily with Section 7(k) and its legislative history. Therefore, we hold that a rescue and ambulance service employee who is an employee of the public agency's fire protection activities is an integral part of the fire protection activities if he/she satisfies the "substantially related" test of Section 553.215, meets the eighty percent exemption requirement of Section 553.212, and meets the majority of work requirement of Section 553.213(b).
 
 III.
 A.
 
 50
 Given the foregoing analysis, we must first decide if the Plaintiffs satisfy the two requirements of Section 553.215. The Plaintiffs argue that if the two-part test of Section 553.215 applies to them, they do not meet those requirements. The first requirement is that the Plaintiffs must be trained in the rescue of fire, crime, and accident victims, or in the rescue of firefighters or law enforcement personnel.
 
 
 51
 Regarding this requirement, a Letter Ruling by the DOL, Wage and Hour Division (Oct. 9, 1987) [hereinafter DOL's Letter Ruling], explains the regulation by stating:
 
 
 52
 The first test requires the EMTs be trained to rescue individuals who have been injured or who are in danger of being injured. Under these circumstances, the term "rescue" refers to actions taken to free a victim from imminent danger or harm by the most expeditious means. In many cases, this may require an EMT to take action beyond merely applying medical treatment such as bandaging, administering oxygen, or transporting an individual to a hospital.... Therefore, we interpret the requirement that an EMT be "trained to rescue" as meaning that the individual has knowledge of the basic, life-saving procedures and life-support procedures (i.e. CPR, administering oxygen, and extrication techniques). However, it is not necessary for an EMT to routinely perform any or all of these procedures in order to meet the requirements of the first test referred to above.
 
 
 53
 J.A. at 123.
 
 
 54
 The Plaintiffs argue that many of them are not trained in extrication techniques and are prohibited from attempting to rescue individuals without proper certification. The district court noted that many of the Plaintiffs are so trained, however. "The evidence shows that many, but not all, of the personnel of the Emergency Services Division have received training in extrication." J.A. at 202. The court concluded that, even though all of the Plaintiffs have not received extrication training, the requirement of trained to rescue was met. In reaching this conclusion, the court relied on a district court opinion, namely O'Neal v. Barrow County Bd. of Comm'rs, 743 F.Supp. 859, 863 (N.D.Ga.1990), vacated and remanded, 980 F.2d 674 (11th Cir.1993). The district court in O'Neal concluded that the plaintiffs in that case had been trained in rescue techniques even though they had not been trained to extricate victims. The court stated:
 
 
 55
 the plaintiffs ha[d] received training in the activities paramedics and EMTs are commonly understood to perform, i.e., to provide necessary emergency treatment at the scene of a fire, accident etc. to stabilize a patient and to continue treating the patient during transport to an appropriate medical facility.
 
 
 56
 Id.[5] The Eleventh Circuit found that the "court erred in its determination that the County proved compliance with the 'trained to rescue' requirement because the evidence offered ... failed to show that such training was a prerequisite to employment." O'Neal, 980 F.2d at 678. The court remanded the case to the district court to "further develop the facts regarding its training requirements and for the court to determine whether the County meets the 'trained to rescue' requirement as interpreted in the [DOL's] Letter Ruling." Id.
 
 
 57
 We find the Eleventh Circuit's treatment of this first requirement persuasive. As a result, we hold, as the Eleventh Circuit did, "that EMTs are 'trained to rescue' only if they have knowledge of extrication techniques, that is, only if they have some specific training in methods of 'free[ing] a victim from imminent danger or harm by the most expeditious means.' " Id.
 
 
 58
 As the Eleventh Circuit did, we remand for the district court to require Metro to further develop facts regarding the training requirements and for the court to determine whether Metro meets the "trained to rescue" requirement as articulated in this opinion.
 
 
 59
 The second requirement of Section 553.215 is whether the Plaintiffs are regularly dispatched to fire, crime scenes, riots, natural disasters and accidents. The test is further explained in the DOL's Letter Ruling, which states, in part:
 
 
 60
 The second test to determine if activities are "substantially related" to fire protection or law enforcement is that EMTs must be "regularly dispatched" to such things are fires or accidents. There is no specific frequency of occurrence which establishes "regularity"; it must be determined on the basis of the facts in each case.
 
 
 61
 J.A. at 123-24 (citation omitted).
 
 
 62
 The district court concluded that the Plaintiffs were regularly dispatched. The court relied on the following limited facts: between March 15, 1990 and December 31, 1990, Emergency Services transported 6,733 victims from motor vehicle and related accidents and responded to 120 fire calls, 1,650 crime scene calls, and 8,943 general medical illnesses. We find that these facts are insufficient to resolve this issue. We agree with Eleventh Circuit that the district court should consider the following factors:
 
 
 63
 (1) the percentage of the [Emergency] Service[s'] total calls that are dispatches to fires, crimes, and automobile accidents; (2) the percentage of total EMT[/paramedic] [person]-hours spent responding to dispatches to fires, crimes, and automobile accidents; and (3) the percentage of the total number of all fires, automobile accident[s], and police calls that occur throughout the county to which the [Emergency] Service[s] is dispatched.
 
 
 64
 O'Neal, 980 F.2d at 679 (footnotes omitted).[6] In accordance with the Eleventh Circuit, we do not speculate as to what percentage under these three factors will satisfy the "regularly dispatched" requirement in this case. The district court can make this determination following further factual development. See id. at 680.
 
 B.
 
 65
 Pursuant to Section 553.212, we must next determine what qualifies as nonexempt activities. In determining what are nonexempt versus exempt activities, we follow the language in Section 553.215 and the Eleventh Circuit in O'Neal. Section 553.215 delineates the types of exercises which are fire protection activities and law enforcement activities. Those activities include being dispatched to fires, crime scenes, riots, natural disasters and accidents. The Eleventh Circuit, in O'Neal, states that "nonexempt work generally inures to the benefit of the employer. It is work that generally benefits the employer, which the employer requires its employees to do while they are not engaged in activities related to their fire protection or law enforcement duties." 980 F.2d at 681. The Eleventh Circuit delineated, to some degree, the difference between exempt and nonexempt activities. It held that nonexempt activities include patient transfers (presumably those which are unconnected to fire or law activities) and accident calls, with the exception of automobile accidents. Id.; see also Spires, 980 F.2d at 688-89 (patient transfers are nonexempt activities). It held that waiting to be dispatched for fire or law-related activities would be exempt activities, however. See O'Neal, 980 F.2d at 682.
 
 
 66
 The Plaintiffs contend that they spend more than twenty percent of their time on nonexempt activities. The district court did not make a factual determination regarding this issue.[7] From the present record, it is unclear whether the Plaintiffs spent more than twenty percent of their time working in nonexempt activities. The district court should make those determinations based on the distinctions between exempt and nonexempt activities.
 
 C.
 
 67
 Next, pursuant to Section 553.213(b), we must decide which activities are fire protection activities and which are law enforcement activities, and we must determine whether the Plaintiffs spent the majority of their time engaged in fire protection or law enforcement activities.
 
 According to the DOL's Letter Ruling:
 
 68
 [I]f more than 50 percent of the fire protection/law enforcement call-outs during the applicable work period are calls related to fires, the EMTs who are properly trained and regularly dispatched would qualify as "fire protection" employees for the purposes of section 7(k) of FLSA.
 
 
 69
 J.A. at 124.
 
 
 70
 Based on the present record, it is unclear whether the Plaintiffs spent the majority of their time engaged in fire protection activities. On remand, the district court should consider this issue.
 
 IV.
 
 71
 For the foregoing reasons, we reverse and remand this case to the district court for further consideration.
 
 
 
 *
 The Honorable John W. Peck concurred in this opinion prior to his untimely death on September 7, 1993
 
 
 [1]
 This figure was set by the Secretary at 212 hours. See 48 Fed.Reg. 40,519 (1983)
 
 
 [2]
 A fuller text of the colloquy is as follows:
 Mr. MIZELL....
 Mr. Speaker, I would like to direct a question to the ranking member of the General Labor Subcommittee (Mr. QUIE) with respect to section 6 of the conference report, "Federal and State employees."
 That section departs from the standard FLSA "hours of work" concept for public agency employees who are engaged in fire protection and law enforcement "activities." Was it the intent of the conference committee to cover by such language employees who are engaged in the rescue-ambulance services--activities of a public agency.
 Mr. QUIE. The gentleman is correct that provision, section 6(c), is intended to cover those employees directly employed by a public agency who are engaged in rescue or ambulance activities which are substantially related to fire protection or law enforcement activities. In some instances these rescue or ambulance crews are a part of the fire or police department. In other cases they must be under a separate department of the same public agency, but their activities substantially include rescue and ambulance work associated with fire protection and law enforcement. In that case these employees are covered by the unique provisions of section 6(c)....
 Does the chairman of the General Labor Subcommittee (Mr. DENT) concur in that understanding?
 Mr. DENT. That is correct.
 
 
 [128]
 Cong.Rec. 8598 (section 6(c), referenced above, is the section which became Section 7(k) of the FLSA)
 
 
 [3]
 Section 553.212(a) states, in relevant part:
 (a) Employees engaged in fire protection or law enforcement activities as described in Secs. 553.210 and 553.211, may also engage in some nonexempt work which is not performed as an incident to or in conjunction with their fire protection or law enforcement activities
 .... A person who spends more than 20 percent of his/her working time in nonexempt activities is not considered to be an employee engaged in fire protection or law enforcement activities for the purposes of this part.
 In essence, the implementing regulations to Section 7(k) provide that an employer is not entitled to an exemption for employees engaged in fire protection or law enforcement activities if those employees spend more than 20% of their total hours working in "nonexempt" activities.
 
 
 [4]
 Section 553.213(b) states:
 As specified in Sec. 553.230, the maximum hours standards under section 7(k) are different for employees engaged in fire protection and for employees engaged in law enforcement. For those employees who perform both fire protection and law enforcement activities, the applicable standard is the one which applies to the activity in which the employee spends the majority of work time during the work period.
 
 
 [5]
 The district court in this case also noted that the Fifth Circuit wrote approvingly of the O'Neal standard as articulated by the district court. See Bond, 939 F.2d at 288
 
 
 [6]
 We follow the Eleventh Circuit's notation by cautioning the district court to distinguish between those times Emergency Services is dispatched to a fire from those times Emergency Services is dispatched with a fire department. See O'Neal, 980 F.2d at 679-80, n. 21. As that court held, only the former is relevant. Just as in O'Neal, the fire department in this case is a "first responder," which means that the fire department and Emergency Services may be called to accident scenes that in no way involve a fire or potential for a fire. Calls to such scenes are not "fire protection activities" as defined in Section 553.215 and therefore, should not be considered in determining whether the services provided Emergency Services are "substantially related to firefighting," are exempt activities, or are "fire protection activities," as that term is used in 553.213(b)
 
 
 [7]
 We urge caution in not collapsing this standard with the "regularly dispatched" standard of Section 553.215. Although there may be some overlap between the two requirements, it is possible that an employee could satisfy one of the standards without satisfying the other. For example, "an EMT[/paramedic] who is regularly dispatched to fires or crime scenes, but spends only a small fraction of his work hours on activities 'incident to or in conjunction with' these type of calls does not come under the section 7(k) exemption." O'Neal, 980 F.2d at 682